## Marr's Appeal.

1. Where an account is asked on the ground of fraud, it is not sufficient to charge fraud in general terms; particular acts of fraud should be stated.

2. Fraud without damage is no ground for relief at law or in equity.

3. Fraud used in obtaining a decree, being the principal point in issue, must be established by proof before the propriety of the decree can be investigated.

4. A bill of review is never sustained on strict law, against equity.

5. A guardian may within a reasonable time be called to file and settle his account, although he may have made a settlement with the ward on his arrival at age.

6. The Act of March 29th 1832, sect. 11, does not prohibit the Orphans' Court in all cases from discharging a guardian without his having first settled his account in court.

7. After a ward has arrived at full age, he may waive his legal rights to an account and join his guardian in asking for his discharge; and the court has power to grant it.

8. Where there was a settlement with the ward, and a release to the guardian after she came of age, and on the joint application of the ward and her guardian a decree made discharging the guardian, the decree could not be vacated without proof of some specific act of fraud in obtaining it, or of some injury occasioned by it.

9. The 11th sect. of Act of March 29th 1832, relating to the discharge of a guardian, construed.

February 16th 1875.    Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Orphans' Court of *Philadelphia:* In the estate of Caroline Gould (now Marr), a minor; No. 305, of January Term 1873.

On the 28th of September 1867, Caroline Gould presented a petition to the Orphans' Court of Philadelphia, setting forth that she now resided in Williamsport, Pennsylvania, and "is the daughter of Isaac Gould, deceased, late of Trenton, New Jersey; that on the 19th day of February A. D. 1864, William Grant was appointed by this court, guardian of the person and estate of your petitioner, and that the estate of the petitioner, to the amount of $50,000, has passed into, or ought to have passed, into the hands of the said guardian, which your petitioner was not aware of, until a long time after certain releases had been given by said petitioner to said guardian, and that your petitioner is well informed, and believes that her said guardian, William Grant, has filed no account or settlement of the estate whatever.    That your petitioner became of age on the 20th day of November A. D. 1866, and that on the 21st day of November A. D. 1866, the said William Grant procured from your petitioner, a release from his guardianship, by misrepresenting the true state of facts to your petitioner —your petitioner not comprehending the object or purport of said release."

The prayer was for a citation to the guardian, to file an account of his guardianship.

A citation was awarded as asked for.

The guardian answered:—

" That he was appointed guardian of the person and estate of the petitioner, by the court, February 19th 1862. That no estate of the petitioner has passed into his hands, or ought to have come into his hands, nor is he under any liability to the petitioner on any account, either by receipt of estate or negligence in not receiving estate belonging to her, or otherwise, howsoever. That after she became of age she executed the release, with full knowledge of the facts of this respondent's relation to her estate, and it is not true that he ever made any misrepresentations to her, or that she did not comprehend the object and purpose of said release, and the same was read to her and she fully understood it and acquiesced in it. That thereafter, upon her application through her counsel and attorney of this court, the respondent and his sureties as guardian, were discharged from said guardianship and liability, by this court.

The discharge of the guardian and his sureties by the Orphans' Court was on the 22d of December 1866.

The release was dated November 21st 1866; it recited the respondent's appointment as guardian, and proceeded: "And whereas the said William Grant, since his appointment as guardian, has counselled, assisted and advised in the partition and division of the real estate of the said Isaac Gould, deceased, representing the interest of his ward therein, but has not received any of the rents, issues and profits thereof, nor any moneys, interest, proceeds or profits whatever, belonging to or arising from the personal or real estate of the said Caroline Gould, but on the contrary thereof, has paid out, laid out, expended and advanced, divers sums of money for the benefit of the said Caroline and to her use. And, whereas, the said Caroline is now of full age, and a final settlement has this day been made between the said Caroline Gould and the said William Grant, touching all matters and accounts between them: Now, know all men by these, presents, that I, the the said Caroline Gould, in consideration of the premises, * * * do remise, and for ever discharge and quit claim, the said William Grant, of and from and all manner of actions, suits, &c., * * * concerning the management or disposition of the real or personal estate to which I was entitled as one of the children, next of kin, and heirs-at-law of my said father, Isaac Gould, deceased, whether situate in the state of New Jersey or Pennsylvania, or elsewhere, or for, or by reason of any matter, cause or thing whatsoever, relating thereto, or to the duties or trust imposed upon, or reposed in the said William Grant, as my guardian, as aforesaid."

On the 20th of June 1868, the ward presented a second petition, reciting the former petition and answer. She averred " that the said release was obtained by misrepresentation and fraud, and that

[Marr's Appeal.]

she never did authorize or direct any attorney of this court to apply for or consent to the discharge of the said respondent or his sureties, and that any such application was made without her knowledge and consent and against her will. Your petitioner therefore prays that the said alleged release may be declared null and void, and that the said decree of discharge, if such there be, shall be vacated and rescinded, and that the said William Grant may be ordered and directed to file, exhibit and settle an account of his trust aforesaid according to law."

The respondent answered this petition, averring " that it is not true that the release mentioned in his answer to the petition of Caroline Gould first filed against him was obtained by misrepresentation or fraud, or that she never authorized or directed an application for or consent to his discharge of the sureties, or that said application was made either without her knowledge or consent or against her will, but on the contrary the said release was made by her freely, without any misrepresentation or fraud, and with full knowledge of all the facts, and she did voluntarily, of her own free will, consent to said application for his discharge in writing upon the petition therefor, with full knowledge of its purpose and object."

An examiner was appointed, who took a large amount of testimony, which was reported to the Orphans' Court.

The facts are fully stated in the opinion of Mr. Justice Mercur, and, with the foregoing documents, will sufficiently present the case.

On the 30th of November 1872 the Orphans' Court dismissed the petition with costs.

The petitioner (now Mrs. Marr) appealed to the Supreme Court, and assigned for error, the decree dismissing her petitions.

*D. W. Sellers*, for appellant.—The law will not support a ward's release to a guardian made in so short a time after she comes of age : Stanley's Appeal, 8 Barr 433; Lukens' Appeal, 7 W. & S. 48 ; Say's Ex'rs. *v.* Barnes, 4 S. & R. 114; Will's Appeal, 10 Harris 332; Kinter's Appeal, 12 P. F. Smith 318; Witman's Appeal, 4 Casey 378.

*G. L. Crawford* and *B. H. Brewster*, for appellee.—If it be apparent that nothing would be due, an account will not be decreed. The real estate belonged to the ward's brothers and sisters as tenants in common with herself, and they had the right to work it, being responsible to her for the proceeds; her guardian could not stop them : Hilliard on Inj. 372, pl. 31; Twort *v.* Twort, 16 Vesey 128; Filbert *v.* Hoff, 6 Wright 97. The petitions here are to vacate a final decree, and they should state specific error: Kachlein's Appeal, 5 Barr 95; Yeager's Appeal, 10 Casey 173; Russell's Appeal, Id. 258.

Mr. Justice MERCUR delivered the opinion of the court, January 17th 1876.

This was an application by the appellant to have a decree of the Orphans' Court vacated, which had discharged the appellee as her guardian. The object was to have the decree removed so as to compel him to file and settle the account of his guardianship.

On the day after the appellant became of full age, she had made a final settlement with the appellee. She had then duly executed, under seal, acknowledged and delivered to him, a full release as her guardian, both in New Jersey and in Pennsylvania. About a month after its execution, on the presentation of a petition duly signed and acknowledged by both the appellant and the appellee, he was discharged by a decree of the Orphans' Court here. More than nine months thereafter she presented her first petition, asking for an order on him to file and settle his final account. After nearly the same interval of time, she presented a second petition, in which she further asked that the release which she had given him be declared null and void, and that the decree be vacated. In neither of the petitions was any distinct act of fraud specifically and particularly averred.

Where an account is sought on the ground of fraud, it· is not sufficient to make such a charge in general terms, but it should be pointed, and state particular acts of fraud: Bright. Eq. Juris., § 57. The attempt here was to have set aside and vacated, on a general allegation of fraud, a final decree of a court of record. It was a decree made by a court, in regard to its own records, at a time when all the parties were before it. Its jurisdiction of the subject-matter and of the persons was undoubted. She was under no legal disability when it was made. It was then an application to the equitable power of the court to cause it to set aside one of its own decrees.

The application ought not to have been entertained, without some distinct and specific act of fraud having been averred in procuring the decree, and without the additional averment of some specific error and wrong that had been committed, which could not otherwise be corrected. Fraud without damage is no ground for relief at law or in equity: Bispham's Eq., § 217; Clarke v. White, 12 Peters 178. That a decree obtained by fraud, and resulting in injury, may be impeached, is undoubted. It may be done by original bill, without the leave of the court: 1 P. Wms. 736; 2 Id. 73; 3 Id. 111. But the bill must set out the circumstances of the fraud. The fraud used in obtaining the decree is the principal point in issue, and must be established by proof before the propriety of the decree can be investigated: Johnson's Appeal, 9 Barr 416. It follows then that the court would have committed no error if it had refused to entertain the application. Having decided other-

wise, the obligation rested on the appellant to establish by proof, facts sufficient to show fraud in obtaining the decree.

In looking through the voluminous testimony taken by the examiner, we discover no such evidence. The appellant appears to have been an intelligent woman, of good business capacity. She was fully conscious that about a month before she united in asking for this decree, she had made a full and final settlement with the appellee, "touching all matters and accounts between them." She knew that on that settlement she had admitted, averred and declared in the release, which she had then executed, that "the appellee had not received any of the rents, issues or profits of her lands, nor any moneys, interest, proceeds or profits whatever belonging to, or arising from her personal or real estate; but on the contrary he had paid out, expended and advanced, divers sums of money for her use and benefit." She knew his functions as her guardian had ceased. She therefore recognised his right to be discharged.

No witness contradicts any fact averred in the release. She does not now allege any of them to be untrue. They are conceded to be true. Being true, they established sufficient grounds for the discharge of the appellee. No fraud was then practised on the court in obtaining the decree.

The appellant, however, claims that the appellee had neglected and omitted to look after her interest in some timber lands and lumber in this state. The facts on which that claim rests are briefly these. Isaac Gould, the father of the appellant, died intestate at his residence in Trenton, New Jersey. He left a widow and four children. Three of the children were of full age. The appellant was nearly three years under that age. The appellee also resided at Trenton. He was first appointed guardian for the appellant in New Jersey, and soon thereafter by the Orphans' Court of Philadelphia. Gould died seised of real estate in New Jersey, and of valuable timber lands in this state; more than a year before the appellant became of full age, she made an agreement with the other heirs for a partition of the lands. The appellee refused to participate in the agreement, and she executed the writing in her own name. Sometime after the execution of this agreement she and one of her sisters, Mrs. Westcott, made an arrangement with Mr. Westcott for the manufacture of lumber on some of the timber lands in this state, which, under the agreement of partition, were taken by the two sisters. The appellant now complains that Westcott did not fully account to her and pay over the proceeds of her share of the lumber manufactured, and that the appellee is liable to her therefor.

She was nearly of full age when these transactions occurred. About the same time she entered into a contract with Westcott to sell him the undivided half of the mansion property at Trenton,

[Marr's Appeal.]

which she took in the partition. After arriving at majority she ratified it by deed, and confirmed the partition made with all the members of the family. She also settled and adjusted with West-cott a claim he had against her for board, and for money advanced. Precisely to what extent this may have affected their lumber transactions, or how far she thereby ratified and assumed the con-tract with Westcott, in her own right, the evidence fails to disclose. This lumber transaction was the act of the appellant and not that of the appellee.

At the time she executed the release, her knowledge relating thereto was vastly superior to his. While in the possession of this information she made the settlement, executed the release, and petitioned for the decree of his discharge. Under all these circumstances it would now be most inequitable to hold him liable for any sum that may be due to her from Westcott. Her applica-tion may be considered in the nature of a bill of review, which is never sustained on strict law and against equity: Stevenson's Executor's Appeal, 8 Casey 318; Yeager's Appeal, 10 Id. 173.

The view we have taken does not conflict with Lukens' Appeal, 7 W. & S. 48; Stanley's Appeal, 8 Barr 433, and kindred cases. It is not now to be questioned that a guardian may, within a rea-sonable time, be required to file and settle his account in the Or-phans' Court, although he may have made a settlement with his ward on his arriving at full age.

The 11th section of the Act of 29th March 1832, Purd. Dig. 413, pl. 44, has been urged as prohibiting the Orphans' Court in all cases from discharging a guardian until he shall have first filed and settled his account in said court. A careful consideration of that section leads us to a different conclusion, and one which ac-cords with the practice in many parts of the state. The whole of that section which precedes the proviso declares, " the Orphans' Court shall have power, upon the petition of any such guardian, to discharge him from the duties of his appointment." It professes to extend to those cases only in which the discharge is granted on the petition of the guardian alone. The proviso then declares what action shall precede the discharge thus asked for by the guardian. It does not enlarge the application of the enacting part of the section to cases not included within it; but restrains and qualifies its operation. A proviso is something engrafted upon a preceding enactment: 9 B. & C. 835; Dwarr. on Stat-utes 514. Then, without that enacting clause the proviso has no support. It is not self-sustaining. The basis of its power and the source of its strength is that original root. It extends to the class of cases only which are covered by that enactment. The more prominent thought expressed in this section is to provide for the discharge of a guardian before the ward shall have become of full age. The first proviso, inter alia, directs the sur-

[Marr's Appeal.]

render of the estate to a subsequent guardian of such ward, or to such other person as the court shall appoint to receive it. The second proviso declares "it shall be the duty of the court to appoint some suitable person to appear and act for the ward in respect to the settlement of such account." It manifestly is not the design of the act to make it obligatory on the court "to appoint some person to receive the estate" after the ward has passed his minority, whether one month or ten years, nor to act for him, when he is competent to protect himself. But conceding that the spirit of the act also requires that the account of a guardian shall in all cases be filed and settled in the Orphans' Court, before he shall be discharged under that section, it still limits the operation of the enacting clause to those cases wherein the discharge is asked for "upon his own petition." The act is wholly silent in regard to granting the discharge of a guardian, on the concurring petition and request of a late ward, after he or she shall have arrived at full age. After the ward has arrived at full age, and being *sui juris*, she may undoubtedly waive her legal rights, and join with her former guardian, in asking for his discharge. When she does so unite in the request, the power of the court to grant it is clear. To deny this, is to impose upon her a guardianship beyond her minority, and make it of uncertain duration. We concede that in such cases the court should act with due caution, and be satisfied that no fraud was being perpetrated, in obtaining the decree of discharge. In this case the court did so act and was satisfied. They are still satisfied that no fraud was practised on them in procuring the decree, and have refused to vacate it. In the face of this action there is no warrant for saying that any fraud was practised on the court. It is sustained by no proof. The record substantially denies it.

We hold that when to a settlement made, and release duly executed by the ward, after she arrived at full age, is superadded, on her concurring petition, a decree of the court regularly obtained, discharging the guardian and his sureties, that decree cannot be vacated without proof of some specific act of fraud in obtaining it, and of some injury occasioned thereby.

The learned judge was therefore entirely correct in dismissing the petitions.

Appeal dismissed, and proceedings affirmed with costs, to be paid by the appellant.

Chief Justice AGNEW and Justices SHARSWOOD and PAXSON dissented.