Hoffman's Appeal.

Argued March 26, 1935. Before Frazer, C. J., Simp-
son, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

(1)

2

*Quincy D. Hastings,* for appellants.

*A. B. Jobson,* of *Breene & Jobson,* with him *G. G. Martin,* for appellees.

OPINION BY MR. JUSTICE MAXEY, May 13, 1935:

This is an appeal from the order of the orphans' court refusing the prayer and dismissing the petition for the specific performance of a contract for the leasing of certain premises containing oil and gas. This lease was alleged to have been entered into between Laura B. Cross and Harriet M. Cross, sisters, both of whom were deceased at the time of the presentation of the petition, parties of the first part, and H. E. Hoffman, one of the petitioners, party of the second part. Upon this petition being filed, a citation to show cause, etc., was duly directed to Ella Cross Black and to Charles N. Black, her husband, as executors of the last will and testament of Laura B. Cross. An answer was filed by the executors. The respondents then filed a bill for discovery of the alleged agreement on which the petition for specific performance was based. In this bill they averred that the agreement was false, fraudulent and forged, and that in fact it never legally existed. They prayed for an order directing that the agreement be impounded for the purpose of inspection by themselves and counsel. The defendants made no answer to this bill for discovery and a decree pro confesso was taken against them. From the decree thus entered an appeal was taken to the Supreme Court, which, in an opinion filed November 28, 1932 (309 Pa. 423, 164 A. 518), sustained the action of the lower court.

In the decree now being reviewed the court below said: "In the instant case the petitioners are the same parties as the defendants in the case of Ella Cross Black and Charles N. Black, executors of the last will and testament of Laura B. Cross, deceased, v. H. E. Hoffman, M. A. Gibson and F. L. Forrester, and the respondents in this case are the same as the plaintiffs mentioned in the foregoing litigation. Hence, the parties to the action are the same and the question involved in these two cases is identical. Therefore a determination of the question in one case is res adjudicata." In support of its conclusion the court quoted Equity Rule No. 51, reading as follows: "When a bill is taken pro confesso, the facts therein stated shall be presumed to be true, and the court shall proceed ex parte to enter the appropriate final decree, which may thereafter be opened, however, and defendant permitted to answer over, upon cause shown, and on such terms and conditions as to trial, continuance and costs as to the court shall seem meet. A decree pro confesso shall have all the force and effect of a decree entered after a contest, so far as relates to all those who were served or appeared in the suit." The court below further said: "A copy of the alleged lease is attached to the petition. A reading thereof plainly indicates that the same is executory and this is frankly admitted by counsel representing the petitioners. . . . We are of the opinion that the agreement . . . being executory in nature was binding only as between the parties thereto, and the present respondents having no knowledge of its existence or of the terms and conditions thereof, and having no reason to suspect that such an agreement existed are not bound by its terms."

The decree of the lower court must be affirmed though we do not adopt the rationale of its opinion. The alleged agreement, a copy of which is printed in the record, provides: "In consideration of one dollar . . . the parties of the first part agree to renew or extend said lease on or before the expiration thereof on November 8, 1931, to the

party of the second part and his associates . . . upon the same terms as the best offer the parties of the first part may have for any lease on said premises after the said eighth day of November, 1931. That is, the said Hoffman and the said Gibson and Forrester are to have the privilege of re-leasing the premises for such term and under such conditions as the parties of the first part may consider the best offer received from any other prospective lessees. This agreement to avail and bind as well the heirs, executors, administrators and assigns of the respective parties as the parties themselves." The specific performance asked for might well have been refused on the ground *not* that the alleged contract was executory *but that* it was too *indefinite* in its terms. To agree to extend a lease for oil and gas "for such term and under such conditions" as the landowners "may consider the best offer received from any other prospective lessees" is vague. At most this is an agreement merely to make a lease upon terms not then agreed upon. In Zimmerman v. Rhoads, 226 Pa. 174, 75 A. 207, this court said: "A court of equity will not enforce a contract, unless it is complete and certain in all its essential elements. The parties themselves must agree upon the material and necessary details of the bargain, and if any of these be omitted, or left obscure or indefinite, so as to leave the intention of the parties uncertain respecting the substantial terms of the contract, the case is not one for specific performance. . . . It is not the function of a court of equity to make a contract for the parties, or to supply any of the material stipulations thereof. If any of the essential details are wanting a chancellor will not supply them in a decree for specific performance." In Baldridge v. George, 216 Pa. 231, 65 A. 662, we said: "The essential basis of a decree for specific performance is a definite present agreement in regard to a specified piece of land, clearly designated as present to the minds of both parties, and to be conveyed by one to the other." In that case specific performance was asked on a contract which pro-

vided that one of the parties "would purchase a house suitable for himself and wife and Jennie G. Baldridge (the petitioner) and her family." The court said: "If he [that is, one of the parties] had never bought such house there never would have been any subject-matter on which this proceeding could operate." In the instant case it is possible that the landowner might never have any offers from any other prospective lessees, and therefore there would be no "best offer received from any other prospective lessees," which could be incorporated in a decree for specific performance. Furthermore, what constituted the "best offer" would, in itself, be probably a matter of dispute and uncertainty. In O'Connell v. Cease et al., 267 Pa. 288, 110 A. 266, this court held: "Equity will not decree the specific performance of a contract unless its terms are clear and capable of ascertainment from the instrument itself," citing Hammer v. McEldowney, 46 Pa. 334, and Reilly v. Gautschie, 174 Pa. 80, 34 A. 576. This court there said: "The essential basis of a decree for specific performance of a contract to convey real property is a definite present agreement in regard to a specific piece of land, clearly designated as present to the minds of both parties, and to be conveyed by one to the other. . . . It is not the function of a court of equity to make a contract for the parties nor to supply any material stipulation thereof": Albright v. Albright, 228 Pa. 552, 77 A. 896. See also 25 R. C. L., page 218, section 17.

There is another ground on which the decree prayed for could have been justly refused. In Burk's App., 75 Pa. 141, this court said: "The specific performance of a contract in equity is of grace, not of right." See also Edelstein v. Sell et al., 269 Pa. 288, 112 A. 435, and Willard v. Taylor, 8 Wall. 557. ". . . Specific performance of a contract will not be decreed where its enforcement would be inequitable under the particular facts as they exist. This is in accordance with the general doctrine of equity that when a party comes into a court of chancery seeking equity he must have clean hands, and is bound to do jus-

tice, and not ask the court to become the instrument of iniquity. Before relief will be granted it must appear that good conscience and substantial justice require it": 25 R. C. L., page 223, section 21; King v. Hamilton, 4 Pet. 311.

The mere chronology of events in this case generates doubt as to the good faith of appellants' claim. On *June 17, 1931,* Mrs. Ella C. Black, as executrix, wrote Messrs. M. A. Gibson, F. L. Forrester and H. E. Hoffman (appellants) notifying them to vacate the premises at the expiration of their lease on November 8, 1931. On *July 14, 1931,* the attorney for these appellants wrote Mrs. Black, asserting that Harriet Cross and Laura B. Cross had under date of November 23, 1915, "executed an agreement to extend the original term of said lease [i. e., the oil and gas lease in question]." No mention was made in this letter of July 14th of the fact that the alleged agreement on which appellants based their claim for extension of the term had been destroyed by fire *June 24, 1931,* which date by a singular coincidence was one week *after* Mrs. Black had ordered them to vacate the premises. Instead of promptly showing her this alleged agreement and taking steps to safeguard it, they carelessly permitted it to be destroyed. On November 5, 1931, they filed a bill in equity asserting rights based upon it but they still guarded against any disclosure of its destruction. This latter fact did not become known until December 12, 1932, when appellants applied to the lower court to open the decree in the proceedings on the bill for discovery. By that time three appeals to this court had been acted upon adversely to them. See 309 Pa. 418, 164 A. 516; 309 Pa. 423, 164 A. 518, and 312 Pa. 89, 165 A. 489.

In the last opinion filed, where we held that the court below had not abused its discretion in refusing to open a decree taken pro confesso on a bill of discovery to produce the alleged contract, we noted that the appellants when they filed their bill for the specific performance of the alleged contract, on November 5, 1931, "were strangely

silent as to its destruction by fire four months and twelve days previously." We said further: "Not even the filing of the bill for discovery by the appellees on December 9, 1931, was sufficient to tempt the appellants to disclose the fact now alleged that the thing to be 'discovered' had departed its physical existence several months before." We also said: "Even when the appeal from the decree pro confesso on a bill for discovery for inspection of this now questioned contract was argued before this court on September 28, 1932, appellants concealed from us the fact of its alleged destruction by fire fifteen months and four days previously." We there affirmed the principle that "courts of equity do not recognize and protect the equitable rights of litigant parties unless such rights are in pursuance of the settled juridical notions of morality, based upon conscience and good faith." We reiterated also the principle that "Whenever a party, who as *actor* seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf to acknowledge his right or to award him any remedy."

As we review this case for the fourth time during the last two and a half years, we are impelled to the conclusion that these claimants are endeavoring, without any substance of right, to retain possession of 115 acres of land containing oil and gas, their lease on which expired November 8, 1931. Their assertion that this lease was extended on November 23, 1915, for an additional period of ten years beyond November 8, 1931, bears such an appearance of spuriousness as to make no appeal to a chancellor's conscience. The studied and long continued concealment from this court and from the court below and from their adversary of an important fact which, if true, any litigant with due regard for candid dealing would have promptly disclosed, conflicts with established "juridical notions of morality," offends a chancellor's con-

science, and negatives the usual presumption that claims presented to a court of equity are grounded in good faith.

The order is affirmed at the costs of appellants.