**McARTHUR et al. v. ROSENBAUM CO. OF PITTSBURGH.**

Civ. A. No. 7583.

United States District Court
W. D. Pennsylvania.

July 25, 1949.

Mahlon E. Lewis, Pittsburgh, Pa., for plaintiffs.

Joseph M. Hartfield (of White & Case) New York City, Charles E. Kenworthey, Frederick E. Milligan, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

FOLLMER, District Judge.

This is an action for a declaratory judgment under Section 274d of the Judicial Code, 28 U.S.C.A. § 2201.

On plaintiffs' motion for judgment on the pleadings, by order dated March 30, 1949, as amended on March 31, 1949, D.C., 9 F.R.D. 1, Judge McVicar held, inter alia:

1. The Declaratory Judgment Act provides a remedy for the rights asserted by plaintiffs in their petition or complaint and the complaint states a claim against the defendant upon which relief can be granted.

2. The pleadings show an actual controversy exists between the parties.

3. The complaint does not show that plaintiff has failed to join an indispensable party or parties plaintiff.

 The above findings constitute, pro tanto, the law of the case.[1]

At this point, the case proceeded to trial.

### Findings of Fact

1. Plaintiff, L. L. McArthur, Jr., is an individual whose residence is in Chicago, Illinois.

2. Plaintiff, Northern Trust Company, is a corporation organized and existing under and by virtue of the laws of the State of Illinois, having its principal office and place of business in the City of Chicago, Cook County, in said State.

3. Defendant, Rosenbaum Company of Pittsburgh, is a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, having its principal office and place of business in the City of Pittsburgh, Allegheny County, in said Commonwealth.

4. On or about the 2nd day of December, 1912, an agreement of lease was entered into by and between William Stanton, as lessor, and Rosenbaum Company, a Pennsylvania corporation (not the defendant herein), as lessee, covering lands and tenements involved in this proceeding.

5. On or about the 6th day of December, 1912, an agreement of lease was entered into by and between William Stanton et al., as lessors, and Rosenbaum Company, a Pennsylvania corporation (not the defendant herein), as lessee. The terms of this lease, except for the names of the lessors, the description of the leased property and the rents payable thereunder, are identical with the terms of the lease between William Stanton and Rosenbaum Company, which lease is referred to in paragraph 4 above.

6. Contemporaneously with the execution of the said leases the lessors executed a consent to the assignment of the said lease to The Rosenbaum Company (not the defendant herein), a company then formed and about to be incorporated under the laws of the Commonwealth of Pennsylvania.

7. On or about the 12th day of April, 1913, The Rosenbaum Company (not the defendant herein) agreed to the terms of the assignment referred to above, and assumed the obligations of the lessee under the lease.

8. Between the 23rd day of January, 1923, and the 2nd day of February, 1923, the said leases were assigned to National Department Stores, Inc., with the knowledge and consent of the lessors.

9. Subsequently the lease was assigned first to Tech Corporation, then to National Department Stores, Inc., and finally to Rosenbaum Company of Pittsburgh, the present lessee and defendant herein.

10. On the 14th day of February, 1933, receivers were appointed for the said Tech Corporation to No. 18101 in Bankruptcy in the United States District Court for the Western District of Pennsylvania. On the 14th day of June, 1934, the said bankruptcy proceedings were changed to proceedings for corporate reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., after which the said proceedings went on to completion and the discharge of the trustees on the 7th day of February, 1936.

11. On the 6th day of February, 1933, receivers were appointed for said National Department Stores, Inc., to No. 966 in Bankruptcy in the United States District Court for the District of Delaware, and on the 11th day of April, 1933, said corporation was adjudicated bankrupt by said court.

12. Before and during the pendency of bankruptcy proceedings the lessee defaulted in payment of rent and by virtue of said bankruptcy proceedings the lessors were awarded amounts for use and occupancy of the property until the 18th day of January, 1936, which amounts were substantially less than the stipulated rental.

13. Under date of January 18, 1936, the lessors, plaintiffs herein, and National De-

---

[1] Commercial Union of America v. Anglo-South American Bank, 2 Cir., 10 F. 2d 937, 941, cited with approval in Price v. Greenway, 3 Cir., 167 F.2d 196.

partment Stores, Inc., entered into an agreement modifying, changing and amending the terms of the original leases.[2]

14. Rosenbaum Company of Pittsburgh, defendant herein, became the assignee of the lease by assignment of National Department Stores, Inc., dated January 30, 1936.

15. The leases were further modified by an agreement between the lessors and present lessee under date of April 22, 1936, in which rent for a short period was waived, decreased for a further period, provision made for payment of certain flood damage by lessor, and payment of a portion of future rents deferred.

16. In accordance with the provisions of the agreement of January 18, 1936, upon the failure of parties to agree upon the rental after the ninth year from the effective date of the agreement, to wit, February 1, 1936, arbitrators were selected who determined the reasonable rental value of the property and made their award May 8, 1946.

17. Defendant, by a notice in writing dated July 19, 1946,[3] made an election under the provisions [4] of the agreement of January 18, 1936, by which election defendant rejected the right to cancel the said leases prior to the end of the term, to wit, April 1, 1950.

18. Defendant, by same notice dated July 19, 1946, made an election under the provisions [5] of the agreement of January 18, 1936, by which election defendant, in

---

[2] Introductory paragraph recites, inter alia,

"Whereas petitions for a reorganization of National and Tech have been filed in the District Court of the United States for the District of Delaware, and a plan of reorganization has been filed in said Court, to effectuate which it will be necessary to modify, change and amend the terms of said leases in the respects hereinafter set forth, and to form a new corporation to operate said Department Store, said new corporation to be known as Rosenbaum Company of Pittsburgh, to which corporation shall be assigned the original leases, as amended, as herein provided."

[3] "Rosenbaum Company of Pittsburgh
 "July 19, 1946

"Executive Offices

"Avey and Irish

"Jones Law Building

"Pittsburgh, Pennsylvania

"Gentlemen:

"Rosenbaum Company of Pittsburgh hereby accepts the Award of Messrs. McFall, Downie and Marshall, Arbitrators, dated May 8, 1946, and reaffirmed on May 20, 1946, insofar as the same applies to the balance of the term stated in the lease, namely to March 31, 1950.
 "Very truly yours,
"Rosenbaum Company of Pittsburgh
 "David Klein

"DAVID KLEIN
 "Secretary-Treasurer

"DK:gem

"cc: Mr. Harry H. Schwartz, Pres.
 "National Dept. Stores
 "F. E. Milligan, Esq.
 "Reed, Smith, Shaw & McClay
"ORIGINAL IN SAFE DEPOSIT BOX"

[4] "(G) Either on or before the end of the ten year period, or on or before sixty days after the rent for the balance of the term is determined in the manner provided in this agreement, whichever date is the later, the Lessee shall elect whether or not it shall continue the said leases for the balance of the term at the rent determined by the arbitrators or whether it shall cancel the said leases. If the Lessee elects to cancel the said leases it may do so on one year's notice to the Lessors, in writing, without any further obligation or liability, other than the payment of rent for the period following the end of the ten year term to the date the Lessee surrenders possession of the demised premises to the Lessors, which surrender shall be not later than one year after the date of notice of cancellation, such rent to be on the basis of the rent paid during the ten year term, subject, however, to all the remaining terms, covenants and conditions of this agreement."

[5] "(C) The term of the original leases shall continue, to-wit; to the 31st day of March, 1950, subject, however, to the right hereinafter granted to the Lessee as provided in Paragraph 'G' hereof. In addition to said term as provided in the original leases, the Lessors hereby grant to the Lessee an option to extend said term for an additional five years, to-wit, from April 1, 1950 to March 31, 1955. Said option must be exercised or rejected by the Lessee by notice, in writing, addressed to the Lessors in care of Avey & Irish, either on or before a date not later than ten years from the date that this agreement becomes effective, as hereinabove provided in Paragraph 'B', or sixty days after the rent for the balance of

effect, rejected the option to extend the term of said lease for an additional five years; to wit, from April 1, 1950, to March 31, 1955.

Further findings of fact appear hereinbelow in the discussion.

### Discussion

The material issues involved in the pleadings in this case are but two, namely:

1. Is the first refusal clause in the lease agreement of December 2, 1912, and December 6, 1912, sufficiently definite to be enforced?

2. Is the first refusal clause superseded by the agreement of January 18, 1936?

The first refusal clause reads as follows:

"It is further agreed that the Lessee shall have the first refusal to make a new lease from the first of April, 1950, upon the herein described property and the building erected thereon."

Considering the issues above posed, in their reverse order:

In 1936 the parties entered into the agreement, hereinbefore referred to, amending the 1912 contracts providing, inter alia,

1. That "In addition to said term as provided in the original leases, the Lessors hereby grant to the Lessee an option to extend said term for an additional five years, to-wit, from April 1, 1950 to March 31, 1955."

2. That all of the terms, covenants and conditions of the original leases should remain in full force and effect except as specifically modified, changed and amended by the agreement.

3. That the rent, which had theretofore been a fixed annual sum, was changed to a percentage of gross sales, which was to continue for a period of ten years from the effective date of the agreement.

4. That if the parties at the end of the ten year period had failed to agree upon the rental for the balance of the term, arbitrators should be selected to determine the reasonable value for the balance of the term after the ten year period.

5. That on or before sixty days after the rent for the balance of the term had been determined, either by agreement or by arbitration, the lessee had the right to elect whether it would continue the leases for the balance of the term at the rent determined by the arbitrators or whether it would cancel the leases. That the lessee was given the right to cancel the leases upon giving one year's written notice to the lessor, without any obligation to pay rent to the end of the term of the original leases beyond the period of one year after the date of notice of cancellation.

6. That in making its election whether to continue the leases until the end of the term, namely, March 31, 1950, or to cancel the leases upon one year's notice, if the lessee elected not to cancel the leases, it was required at the same time to elect to exercise or reject the option which it had been given (paragraph 1 above) for an additional term of five years at the rent fixed either by the parties or by the arbitrators.

The parties having failed to agree upon a rental which would be applicable from the expiration of the ten year period to the end of the term, arbitrators were appointed who, on May 8, 1946, fixed the rental in accordance with the 1936 agreement, which was the rent to be paid from 1946 until the end of the term and the amount of rent to be paid under the option.

At this posture the tenant had the right within sixty days to

(a) Cancel the leases by giving one year's written notice to the lessors;

(b) Elect to continue the leases until the expiration of the term, namely, March 31, 1950, upon payment of the rent fixed by the arbitrators; or

(c) Elect to continue to occupy the premises until the end of the term (paying, as rent, the amount fixed by the arbitrators) and to exercise the option afforded it

---

the term is determined in the manner provided in this agreement, whichever date is the later.

"If the Lessee exercises said option as herein provided, the rental for said additional term of five years shall be the same as is determined by the parties, or upon their failure, by arbitrators as hereinafter provided in Paragraph 'F' hereof."

under the 1936 agreement for an additional term of five years from the expiration of the term, namely, from April 1, 1950, to March 31, 1955, at the rental fixed by the arbitrators.

In the event of its election to continue the leases until the expiration of the term it was required to elect to exercise or reject the option covering the five year additional period from April 1, 1950.

On July 19, 1946, exactly sixty days after the arbitrators reaffirmed their award, the lessee, defendant herein, wrote the lessors' agent as follows:

"Rosenbaum Company of Pittsburgh hereby accepts the Award of Messrs. McFall, Downie and Marshall, Arbitrators, dated May 8, 1946, and reaffirmed on May 20, 1946, insofar as the same applies to the balance of the term stated in the lease, namely to March 31, 1950."

The first lease provided for a thirty-five year term, from April 1, 1915, to March 31, 1950. In 1936 the parties elected to enter into the agreement, hereinabove referred to, supplementing or modifying the original lease. In this 1936 agreement, among other things, the parties deliberately considered the matter of the occupancy of the demised property by the lessee for a period after the date of the expiration of the original lease, to wit, March 31, 1950.

From 1912, the year the leases were made and entered into, and 1936, when the leases were amended, there were five assignments made of the leases, two of which assignees were declared bankrupts during the period of their lease holdings.

■ Regardless of the motivating reasons, it is perfectly patent that in 1936, after twenty-one years of occupancy under the original leases, it was desirable to make some changes. It would have been a simple matter for the lessee, had it so desired, to reaffirm, for what it was worth, the so-called first refusal clause in the 1912 lease. It not only did not do so but incorporated in the 1936 amending agreement a formula for dealing with the period after March 31, 1950, the date of the expiration of the original leases, which, in my judgment, completely nullifies the original first refusal clause. The two simply cannot stand together. The lessee cannot "eat its cake and have it too." I am, therefore, of the opinion that the first refusal clause in the 1912 leases was completely superseded by the agreement of January 18, 1936.

Now then as to the content of the first refusal clause in the 1912 agreements, is it sufficiently definite to be enforced? To re-quote:

"It is further agreed that the Lessee shall have the first refusal to make a new lease from the first of April, 1950, upon the herein described property and the building erected thereon."

That clause was written in an agreement in 1912, effective 1915, and with respect to a situation to arise in 1950. It did not guarantee to the lessee an option to renew an old lease on specified terms; nor did it guarantee to the lessee a like option to continue the occupancy of the demised premises for a new period on definite, stipulated terms.

Defendant contends that the meaning of the clause is very clear and has been in continuous use for many years; that it has a technical meaning peculiar to the realtor's business and well known not only in the world of commerce and trade but also in the law; that its simple meaning is that if the landlords shall offer to lease their premises to any third party and shall develop a bona fide offer from such prospective tenant acceptable to them, the lessee, defendant herein, shall then have the first refusal of the said premises on the acceptable offer, terms and conditions.

If the measuring stick is a bona fide offer of rental from a prospective tenant, what would happen if no such offer were forthcoming; or, suppose it were a group of offers, each for a separate and distinct portion of the premises, some on an area basis and some on a percentage of gross sales basis; or, suppose the best offer was for a different term, less or greater than that of the original lease; whose responsibility is it to determine the norm?

Since February 1, 1936, the effective date of the agreement dated January 18, 1936,

the rental consideration paid for the premises which are the subject of this suit was predicated on a percentage of gross sales. Whose responsibility is it to say that a certain percentage of the gross sales of the X Company would produce a like more or less revenue to the lessors than a like percentage of the gross sales of the present lessee, defendant herein?

Defendant submits as authority for its contention a line of cases involving an option to purchase. I do not think they are in point. The only issue for determination there is the sales price.

The present tenancy started in 1915 on a flat cash rental basis and changed in 1936 by agreement of the parties and, through the instrumentality of arbitration to a percentage of gross sales, thereby, by their subsequent conduct, definitely adding to the uncertainty of the terms of the lease.

Under the caption of "Certainty and Definiteness," 32 American Jurisprudence, Landlord and Tenant, Section 958, cites the law as follows:

"Like other contracts or agreements for a lease, the provision for a renewal must be certain in order to render it binding and enforceable. Indefiniteness, vagueness, and uncertainty in the terms of such a provision will render it void unless the parties, by their subsequent conduct or acts supplement the covenant and thus remove an alleged uncertainty. *The certainty that is required is such as will enable a court to determine what has been agreed upon. * * *"* (Emphasis supplied.)

51 C.J.S., Landlord and Tenant, § 56, at page 596, reads as follows:

"A provision for extension or renewal, in order to be enforceable, must be definite and certain in its terms, particularly the terms with respect to the duration of the additional term and the amount of rent to be paid."

A case directly in point is Hoffman's Appeal, 1935, 319 Pa. 1, 179 A. 38, 39, where the dismissal of a petition for specific performance of a contract for the leasing of certain premises containing oil and gas was affirmed on the ground that the contract was too indefinite. The lease provision contained a "best offer" clause similar to the first refusal clause herein.[6]

Justice Maxey, writing for the court, held:

"* * * what constituted the 'best offer' would, in itself, be probably a matter of dispute and uncertainty. * * * The essential basis of a decree for specific performance of a contract to convey real property is a definite present agreement in regard to a specific piece of land, clearly designated as present to the minds of both parties, and to be conveyed by one to the other. * * * It is not the function of a court of equity to make a contract for the parties nor to supply any material stipulation thereof.'"

To hold the first refusal clause in the instant agreements presently effective would require the Court to rewrite the lease, determining the term, the amount of the rental and all other of the many collateral terms and conditions usually found in an agreement necessary for a tenancy such as are presented in this case.

The language of the court in 58–59 Realty Corporation v. Park Central Valet, Inc., 252 App.Div. 72, 297 N.Y.S. 40, 43, in passing on a very similar situation, is most pertinent here, having in mind the difficulties the parties have encountered in endeavoring to arrive at an understanding.

"The clause must be regarded as incomplete, indefinite, and uncertain. If any in-

---

[6] As quoted in the opinion of the court, "In consideration of one dollar * * * the parties of the first part agree to renew or extend said lease on or before the expiration thereof on November 8, 1931, to the party of the second part and his associates * * * upon the same terms as the best offer the parties of the first part may have for any lease on said premises after the said eighth day of November, 1931. That is, the said Hoff- man and the said Gibson and Forrester are to have the privilege of re-leasing the premises for such term and under such conditions as the parties of the first part may consider the best offer received from any other prospective lessees. This agreement to avail and bind as well the heirs, executors, administrators and assigns of the respective parties as the parties themselves."

tention is evidenced it is to leave open to future negotiation the duration of the term of the renewal. This conclusion is strengthened by the testimony relative to negotiations looking toward a renewal had prior to the expiration of the term granted."

I hold that the first refusal clause contained in the 1912 leases is too vague, indefinite and uncertain to be enforceable and, consequently, has no legal significance.

### Conclusions of Law

1. The first refusal clause contained in the agreements of lease dated December 2, and 6, 1912, is superseded by the agreement of January 18, 1936.

2. The first refusal clause contained in the agreements of lease dated December 2, and 6, 1912, does not give the defendant an enforceable option for a new lease of the property for the reason that said clause is too vague and indefinite.