## Strasser *v.* Steck, Appellant.

*Contract—Option—Coal lands—Construction of contract.*

An owner of options on coal land having a right to sell the same, entered into an agreement in writing by which he agreed to "grant, bargain and sell, all the coal and land owned and optioned by him." The agreement further provided as follows: "In consideration whereof said second party, for himself or his assigns, agrees to pay to said first party the sum of One dollar, the receipt whereof is hereby acknowledged, in full for this option, and in the event of this agreement being absolute by the election and notice above mentioned, then and not otherwise, said second party agrees to pay said first party the sundry sums between the prices mentioned in said options to the individual farmers and the sum of forty dollars per acre for each and every acre which may be taken up, and to which good titles are to be had, payable as follows: When the deeds are delivered from the present owners the payments to the farmers to be as stipulated in the options and the same may be determined by surveys." The purchaser subsequently elected to accept the option, and so notified the seller. The purchaser failed to exercise his right to purchase from the farmers after he became the owner of the options. *Held,* that he was liable to the seller for the difference between the option price and $40.00 per acre.

Argued Oct. 30, 1906.    Appeal, No. 26, Oct. T., 1906, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1902, No. 405, on verdict for plaintiff in case of L. S. Strasser v. Amos Steck.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.    Affirmed.

Assumpsit to recover on a contract of sale.    Before EVANS, J.

From the record it appeared that the contract between the two parties was as follows:

"This optional agreement, made February 21, 1901, between L. S. Strasser, of New Kensington, Westmoreland 'county, Pennsylvania, party of the first part, and Amos Steck, of Pittsburg, Pennsylvania, party of the second part,

"Witnesseth : That said party of the first part, for the consideration hereinafter mentioned, covenants and agrees to grant, bargain and sell to the said second party, all the coal and land owned and optioned by him, said party of the first part, situate in Jefferson and adjoining townships, in the county of Washington, state of Pennsylvania ; said options calling for an acreage of 2,237 acres, more or less, and to convey the same to said party of the second part, or his assigns, by deeds of

general warranty in fee simple and free of all incumbrances, provided that on or at any time before March 2, 1901, said second party gives to said first party notice in writing that the said second party elects to accept the property described in said options, a schedule of which is hereto attached and made part hereof, said property being more particularly described in said options.

" In consideration whereof said second party, for himself or his assigns, agrees to pay to said first party the sum of $1.00, the receipt whereof is hereby acknowledged, in full for this option, and in the event of this agreement being absolute by the election and notice above mentioned, then and not otherwise, said second party agrees to pay said first party the sundry sums between the prices mentioned in said options to the individual farmers and the sum of $40.00 per acre for each and every acre which may be taken up, and to which good titles are to be had, payable as follows : When the deeds are delivered from the present owners the payments to the farmers to be as stipulated in the options and the same may be determined by surveys.

" This agreement to be binding upon and inure to the benefit of the heirs, executors, administrators and assigns of the parties hereto."

On March 15, 1901, Steck notified Strasser in writing of his election to take and accept the coal franchises and privileges, which had been granted by the landowners under the options. Steck, however, failed to exercise his right to purchase from the farmers, and denied any liability to Strasser. It appeared that the amounts mentioned in the various options ranged from $28.00 to $35.00 per acre.

Plaintiff presented the following point :

1. That if prior to and at the time of the making of the contract between the plaintiff and defendant, the defendant directed the plaintiff that upon the making of deeds of conveyance for the several tracts of coal referred to in plaintiff's statement of claim, that such deeds should be made directly from the several owners to the defendant, and if the jury further find that the defendant continued from that time down to August 3, 1901, to state to the plaintiff that the deeds should be drawn, and that the plaintiff acquiesced therein, then

such evidence is to be construed as a construction of the contract entered into between the parties and defendant.  *Answer:* Affirmed. [5]

The court charged in part as follows:

[If you find for the plaintiff, then he is entitled to recover what he lost.   He alleges that he lost these options, as I understand the testimony, by reason of this conduct on the part of the defendant; that is, postponing the carrying out of this during the summer, and then towards the end of the options (I don't remember how soon they expired, but my recollection is, within a month from August 3), that he then broke his contract, and by reason of that the plaintiff lost his rights under the options.   If that be true, if you find that by reason of a breach of this contract on the part of the defendant, the plaintiff lost all rights that he had under those options and was compelled to surrender them, then he is entitled to recover what he lost, and what he lost was the value to him of those contracts, the money that he would make out of those contracts provided the defendant had carried out his part of this contract of purchase.   That means, ordinarily, the difference between the purchase price and any expenses which were attached to it by reason of the plaintiff's duties in carrying out his contract.] [6]

[If you find that the plaintiff is entitled to recover because the defendant made an unreasonable demand, and because of the plaintiff's inability to comply with that unreasonable demand, he declared the contract off, then if the plaintiff is entitled to recover, he is entitled to recover whatever he lost.   If he lost these options because of that, then he is entitled to recover the value of those options to him provided they had been carried out.] [7]

Verdict and judgment for plaintiff for $20,358.14.   Defendant appealed.

*Errors assigned* were (5-7) above instructions, quoting them.

*W. B. Rodgers*, with him *H. A. Davis* and *Paul H. Gaither*, for appellant, cited: Evrit Wightman v. Bancroft, 22 Ohio, 172.

*Sol. Schoyer, Jr.*, with him *John P. Hunter*, for appellee, cited: Britton v. Stanley, 4 Wharton, 114; Kirker v. Kaufmann, 31 P. L. J. (N. S.) 205; Eberz v. Heisler, 12 Pa. Superior Ct. 388; Carpenter v. Holcomb, 105 Mass. 280; Frick's App., 101 Pa. 485; People's St. Ry. Co. v. Spencer, 156 Pa. 85; McClintock v. South Penn Oil Co., 146 Pa. 144.

OPINION BY MR. JUSTICE ELKIN, January 7, 1907:

If the agreement entered into between the parties to this action was a contract for the sale of land, the judgment must be reversed; if it was a contract for the sale of options, the case was properly disposed of in the court below. Prior to February 21, 1901, when the contract in question was made, appellee had procured options from fifteen landowners giving him the right to elect to purchase the coal underlying their respective properties within certain limits and at certain fixed prices. In addition to the optioned coal, he owned or controlled a couple of tracts in his own right. The appellant had been engaged in buying and selling coal lands, coke plants and coal operations for a long period of years and was familiar with the prevailing method of handling such deals through options. He knew that the optioned coal did not belong to appellee and that the only interest Strasser had to sell was his right or privilege to elect to purchase under his options. This, however, was a substantial interest in land which could be conveyed to a vendee: Kerr v. Day, 14 Pa. 112; People's Street Railway Company v. Spencer, 156 Pa. 85. Appellee had the legal right to sell his options. Did he do so? The contract itself must furnish the answer. We think the second clause clearly indicates that it was a contract to sell the options. This clause is as follows, to wit: "In consideration whereof said second party for himself, or his assigns agrees to pay to said first party the sum of one ($1.00) dollar, the receipt whereof is hereby acknowledged, in full for this option, and in the event of this agreement being absolute by the election and notice above mentioned, then and not otherwise, said second party agrees to pay said first party the sundry sums between the prices mentioned in said options to the individual farmers and the sum of forty ($40.00) dollars per acre for each and every acre which may be taken up and to which good titles are to

be had, payable as follows : When the deeds are delivered from the present owners, the payments to the farmers to be as stipulated in the options and the same may be determined by surveys." Here, then, in express terms it is provided that when the agreement becomes absolute by election and notice, which were subsequently made and given, appellant agreed to pay appellee, not $40.00 an acre the full price agreed upon for the coal, but the difference between the optioned price and $40.00 per acre. In other words, this difference represented the profit and compensation of the appellee in taking up the options. Again, it is provided, that when the deeds are delivered, not by appellee to appellant, but from the " present owners," the " farmers " are to be paid " as stipulated in the options." Paid by whom ? Clearly by Steck, the purchaser of the options. His covenant was to pay, first, Strasser, the difference between the prices fixed in the options and $40.00 per acre, and, second, the farmers according to the terms of the options. All of which is inconsistent with the contention that the optional agreement was a contract whereby appellee agreed to sell and convey to appellant the coal lands under option.

If Steck was contracting to purchase the optioned coal land from Strasser why did he insert in the agreement the covenant about the delivery of the deeds from, and the payment of the purchase money to, the " farmers " ? It is true appellee did, in the first clause of the agreement, covenant to grant, bargain and sell the coal land owned and optioned by him, and these words are ordinarily used in the conveyance of absolute title, but they may be used in the conveyance of any estate, or interest, which may be transmitted to a vendee, and it follows, that appellee had such an interest under his options as could be granted, bargained and sold. In the present case the legal effect of the whole contract was to grant, bargain and sell options. In the options with the landowners, it was provided that the conveyance should be by " good and sufficient deed," while in the optional agreement between appellant and appellee the covenant was to convey by deed of general warranty free of all incumbrances. It is strongly urged that Steck by this covenant contracted for the warranty of Strasser and not for that of the landowners. If this covenant stood alone,

without explanation or qualification by other parts of the contract, there could be no doubt as to the correctness of this position. It, however, must be read and understood in connection with the whole contract and the subject-matter about which the parties were contracting. When so construed there can be no doubt that the intention of the parties as gathered from the four corners thereof was that if any landowner failed to convey to appellant by deed of general warranty free of all incumbrances, or other satisfactory conveyance, appellee would not be entitled to receive the difference between the optioned price and $40.00 per acre as his compensation for that option. If the title was not good according to the covenants of appellee, the appellant might refuse to elect to take, and in that event, appellee would not be entitled to receive the consideration or compensation provided for him in the optional agreement. Throughout the whole transaction appellant knew that appellee did not own the coal lands, and only had the options to purchase them, and this is what he bargained for. When appellant on March 15, 1901, notified appellee in writing of his election to take and accept the coal franchises and privileges, which had been granted by the landowners under the options, the optional agreement was exercised and the rights and liabilities of the parties thereto were fixed thereby. He then became the equitable owner of the options, and could enforce his rights therein, not only against appellee, but also against the landowners: Frick's Appeal, 101 Pa. 485. If he failed to exercise his right to purchase after he became the owner of the options, the fault was his, not that of appellee. This being our construction of the contract, we can see no error in the submission of the case to the jury by the learned trial judge in the court below as to the measure of damages and all other questions involved in the controversy.

Judgment affirmed.