# Shrut *v.* Huselton et al., Appellants.

*Vendor and vendee—Sale of real estate—Specific performance—Tender of purchase money—Time when essence of contract—Consideration—Sale of wife's real estate—Husband's participation in sale—Statute of frauds—Quitclaim deed.*

1. Where a vendee of land meets the vendor at the time and place mutually agreed upon for settlement, and the vendee, without actually displaying the money, says that he has it and is prepared to go on with the settlement, and the vendor declines so to do, not on the ground that the money was unproduced, but for other reasons, the vendor cannot thereafter refuse to convey the land to the vendee because the latter failed to tender the cash at the date fixed for settlement.

2. Where a contract for the sale of land provides for assumption of a mortgage on the premises, and the balance in cash, and the vendor subsequently orally agrees to accept a judgment note in lieu of a portion of the cash, and at the settlement refuses to accept the note, and demands the cash, while the vendee might not be able to enforce the new agreement, for lack of consideration, the vendor will be estopped from setting up the vendee's failure to produce the entire balance in cash, as a cause for rescinding the contract.

3. Under the facts of this case, time was not of the essence of the contract.

4. Where a wife executes a contract for the sale of her land, in which her husband does not join, but husband and wife execute a deed for the land, which is submitted to the vendee and approved by him, but not delivered, the husband cannot thereafter, all the parties being alive, set up the statute of frauds as a defense against specific performance of the contract.

5. Where vendors wrongfully violate an agreement of sale of real estate, and convey the land to another, and such grantee is joined with the vendors as defendants in a bill for specific performance, the court in entering a decree against the defendants, should require the second grantee to execute simply a quitclaim deed and not a deed of general warranty.

Argued October 11, 1921. Appeal, No. 96, Oct. T., 1921, by defendants, from decree of C. P. Allegheny Co., April T., 1920, No. 617, on bill in equity, in case of Jacob

Shrut v. M. Laverne Huselton and S. H. Huselton, her husband, and Harry Gillman and Rebecca Gillman, his wife. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ. Affirmed, with modified decree.

Bill in equity for specific performance. Before DREW, J.

The opinion of the Supreme Court states the facts.

Decree for specific performance. Defendants appealed.

*Error assigned,* inter alia, was decree, quoting it.

*A. E. Anderson,* with him *Charles S. Crawford,* for appellant.—A vendee before suing for specific performance on his equitable title, either at law or in equity, must tender the purchase money in accordance with the contract: Nulton's App., 103 Pa. 286; Salmon v. Rance, 3 S. & R. 311; Hughes v. Antill, 23 Pa. Superior Ct. 290; Appleton v. Donaldson, 3 Pa. 381.

The acts of plaintiff in offering the second mortgage and then the judgment note amounted to a counter-proposal and a rejection of the contract: Henry v. Black, 213 Pa. 620.

The wife's contract, unlike that of her husband, conveys no interest in the land, legal or equitable, but creates a personal liability only: M'Coy v. Niblick, 221 Pa. 123, 128.

Where parties by their agreements or covenants have deliberately fixed a time for the performance of an act, a court of equity will be cautious to act in disregard of it, and in effect change the contract which the parties have made: Doughty v. Cooney, 266 Pa. 337; Van Kirk v. Patterson, 201 Pa. 90; Sylvester v. Brown, 132 Pa. 467; Remington v. Irwin, 14 Pa. 143; Irwin v. Bleakley, 67 Pa. 24; Hatton v. Johnson, 83 Pa. 219.

*A. E. Kountz,* for appellee, cited: Tripp v. Bishop, 56 Pa. 424.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 3, 1922:

Plaintiff, Jacob Shrut, sued in equity to enforce specific performance of a contract for the sale of real estate, which he had purchased from M. Laverne Huselton, the wife of S. H. Huselton, and which they, instead of conveying to him, had deeded to Harry Gillman; all of whom, with Rebecca Gillman, the wife of the last mentioned, are defendants. After a hearing on bill, answer and proofs, a decree was entered in favor of plaintiff, and defendants have appealed.

The chancellor found: that, on November 17, 1919, the first named defendant agreed in writing to convey the property in controversy to plaintiff, on or before December 1, 1919, upon payment by the latter of $11,125; $100 was paid down as hand-money, and the agreement stipulated that a mortgage for $7,000, then on the property, should be assumed by the purchaser, the balance to be paid in cash at time of settlement; the agreement was not signed by the husband of the vendor, although he took part in negotiating the sale and was present at the execution of the contract; subsequently, all parties in interest, by mutual consent, fixed December 4, 1919, at the office of the vendor's husband, in Pittsburgh, as the time and place of settlement, and they agreed that the vendee might give, and the vendor would accept, a sixty-day judgment note for $500, in lieu of that amount in cash; when the day of settlement arrived, December 4, 1919, the parties met at the appointed place, Huselton representing his wife, who was too ill to attend, and, after existing leases had been duly transferred in writing to the vendee, and a properly executed deed, signed and acknowledged by the vendor and her husband, had been exhibited to and approved by the vendee and his attorney, the latter having deposited on the table, where

the settlement was taking place, a certified bank check for part of the consideration, a certain amount in cash, and the aforementioned judgment note for the balance, Huselton, while raising no question about the certified check, refused to accept the judgment note, saying his wife was not willing to take it; after some talk, the vendee and his attorney, together with the real estate agent who had put through the deal, left the office, but returned in a few minutes with cash, to make up the amount of the note previously refused; the vendee informed Huselton that he was prepared with the cash to make settlement, but the former declined to go on, saying he was too busy to be bothered with the matter and would have to see his wife before doing anything more; on either the following evening, or that of the next day, the vendee, accompanied by George W. Jessup, the real estate agent, appeared at the home of the vendor with the full amount of the consideration, above the $7,000 mortgage, in actual cash; they saw Huselton, his wife being too ill to appear, and tendered him the cash, asking for a settlement, which tender and request were rejected; on December 18, 1919, the Huseltons conveyed the premises in controversy to Gillman, for an advanced price, although the latter had been formally notified, on the previous day, of Shrut's claim to the property.

Appellants, by exceptions in the court below, questioned the finding of the chancellor, urging, among other things, that no cash tender had at any time been made by actually displaying the money to vendor or her agent, S. H. Huselton. In reply to this, the court below very properly remarks that, when Shrut brought the money to Huselton, saying he had it and was prepared to go on with the settlement, and the latter declined so to do, not on the ground that the money was unproduced, but, for other reasons, "He placed himself and his wife, for whom he acted as attorney in fact, in a position where they cannot deny that full tender was made." Since no special consideration appears for vendor's agreement to

accept the $500 judgment note in place of cash, we may add, vendee might not be in a position to enforce that understanding; nevertheless, after making such agreement, the vendor would be estopped from setting up the vendee's failure to produce the $500 in cash at the first meeting for settlement, as a cause for rescinding the contract. Moreover, there is nothing in the written contract to indicate time was of the essence of the agreement, so far as the date of settlement is concerned, and the mere fixing of December 4th, as a mutually convenient date for settlement, would not make that day of the essence of the contract, under the circumstances of this case; had the vendor so intended, it was her duty, when she changed her mind about taking the judgment note, to have forthwith fixed a definite date for the vendee to appear with the proper amount in cash, or, failing in that, she must have allowed a reasonable time. It is not necessary to further discuss this phase of the case, however, for, as before said, the tenders made by the vendee were sufficient, on the facts here involved.

Although the original contract was not executed by vendor's husband, the deed, which was signed and acknowledged by him, as well as his wife, having been produced to the vendee and approved as acceptable to the latter, all the parties to the transaction being alive, was a sufficient memorandum in writing to satisfy the Pennsylvania Statute of Frauds (Tripp v. Bishop, 56 Pa. 424, 428, 429); and the court below did not err in so deciding.

After an examination of the entire record, including a careful reading of the testimony, we are not convinced of reversible error in any particular, although the final disposition of the case, made by the court below, calls for modification.

The decree is affirmed, except in so far as it directs Harry and Rebecca Gillman to join in a general warranty deed; nothing more than a quitclaim deed is required from them; and it is directed that, upon return

of the record, the court below shall forthwith fix a time for hearing, to determine the indebtedness of Gillman to plaintiff for the use and occupation of the premises in controversy, so that all funds deposited in court, above the amount of that liability, may be released from impoundment at an early date; to such extent, the decree is modified. The costs are to be paid by M. Laverne Huselton.