Driebe et al., Appellants, *v.* Fort Penn Realty Company et al.

Argued April 11, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Forrest J. Mervine,* for appellants.

*C. D. Shull,* of *Shull, Shull & Kitson,* with him *C. Raymond Bensinger,* for appellees.

OPINION BY MR. JUSTICE LINN, June 17, 1938:

Plaintiffs' bill for specific performance of a contract to convey land was dismissed on preliminary objections, based (1) on "lack of mutuality of both obligation and remedy between the parties" and (2) absence of tender of performance. The learned judge said the case "falls squarely within the facts in the case of *Elder v. Robinson,* 19 Pa. 364—and is governed by the principle" (quoted from that case) "where a lessor stipulated with his lessee, in the lease, that when the land was offered for sale, the first offer shall be made to the lessee upon terms as favorable as are offered to any other person, this stipulation gives to the lessee no title to or interest in the land, and creates only a personal obligation." We think that construction of the lease fails to give effect to essential terms.

The bill avers that on April 1, 1935, one of defendants, Fort Penn Realty Company, owner of certain property, leased it to plaintiffs for the term of five years at one hundred and fifty dollars per month. By one of the provisions of the lease, the lessor granted the following right to the lessees: "Further, in consideration of the

covenants of this leasehold, mutually granted, the lessor does further grant to the lessees an option to purchase the entire building and lot of which the said premises are comprised, at a price to be mutually agreed upon between the parties hereto; said option to purchase to exist during the term of this leasehold; provided, however, that in the event lessor receives any other bona fide offer to purchase during the term of this option, in such event the lessees must exercise their option to purchase at or in excess of the sum named or agreed upon under such other bona fide offer, within fifteen days of notice in writing thereof from the said lessor, and in the event of failure to exercise said option after fifteen days' notice as aforesaid, then this option purchase herein granted to the lessees shall terminate and be void." Having received consideration for the offer, the lessor could not withdraw it; if the lessees accepted the offer the lessor was bound to sell.

The bill averred that on April 14, 1937, a deed for the property from defendant Fort Penn Realty Company to another defendant, Stroudsburg Security Trust Company, was put on record and that on April 20, 1937, the Stroudsburg Security Trust Company conveyed it to defendant Newberry; that both had knowledge, prior to the conveyances, of plaintiffs' lease and option; that defendant Fort Penn Realty Company never notified plaintiffs "of any bona fide offer of purchase for the leased premises made by the [trust company]," or of the sale to Newberry. Plaintiffs aver that these conveyances[1] were "in fraud of [their] rights . . . under the terms of the lease agreement and option"; that since entering upon the leasehold "they have operated a pro-

---

[1] The bill prayed the cancellation of the deeds, that the records be marked accordingly, and "That upon payment of the purchase price by the plaintiffs that the Fort Penn Realty Company received from the Stroudsburg Security Trust Company for said premises, the defendants be required to execute and deliver to the plaintiffs a good and sufficient deed for said premises in fee simple." See *Shrut v. Huselton,* 272 Pa. 113, 117, 116 A. 43.

duce market . . . have spent large sums of money adapting said premises to that business, and have built up a valuable and profitable business"; that the property is "particularly valuable to them, being situate at the most desirable corner on Main Street . . . and that they are unable to buy any other property as suitable for said business"; that "no damages at law can adequately compensate them for the breach of said contract. . . ."

1. The period of the option was the term of the lease, but that period was reduced to 15 days if the lessor sooner found a purchaser and gave notice. For present purposes the provision dealing with price may be considered in two aspects: (1) a price to be agreed upon by the parties, and (2) the sum at which lessor agreed to sell to another—"the sum named or agreed upon under such other bona fide offer." As, under clause 1, they might never agree, the terms of that portion of the lessor's offer are too vague and indefinite to support a decree of specific performance: see *Elder v. Robinson,* 19 Pa. 364; *Zimmerman v. Rhoads,* 226 Pa. 174, 75 A. 207; *Hoffman's Appeal,* 319 Pa. 1, 179 A. 38; section 370, Restatement, Contracts. But in clause 2, this vagueness is removed by their agreement upon a method of making certain[2] the price at which the lessor must allow his lessees fifteen days in which to accept the offer. By agreeing with a proposed vendee on "the sum named or agreed upon" as the price for the property, the lessor became a fiduciary, and the ascertainment of the selling price operated to vest the lessees with such equitable interest[3] in the land as they would have had if the price had been named in the lease. That vesting resulted from

[2] Compare *Northern Central Ry. Co. v. Walworth,* 193 Pa. 207, 213, 44 A. 253; *Van Horn v. Kemena,* 281 Pa. 579, 581, 127 A. 233; *Windsor Co. v. Makransky & Sons,* 322 Pa. 466, 471, 186 A. 84.

[3] See *Kerr v. Day,* 14 Pa. 112; *Peoples St. Ry. Co. v. Spencer,* 156 Pa. 85, 27 A. 113; *Strasser v. Steck,* 216 Pa. 577, 580, 66 A. 87.

lessor's having agreed not to sell to another if the lessees were willing to buy at a price offered to the lessor which he was willing to accept. The lessor may not, by selling the property without notice, deprive the lessees of that right of election, nor will a buyer, in such circumstances be in better position[4] because, seeing the lessees in possession, his right will be disclosed by inquiry. Once the price was fixed, in the contingency specified, the lessees, if they accepted, became entitled to ask for specific performance; whether they can obtain a decree may of course depend on other equitable principles: see for example, sections 367 to 377, Restatement, Contracts. The effect of the transaction was that during the fifteen-day period, after notice, the lessor and its proposed purchaser at "the sum named or agreed upon," could not complete the transaction proposed by them, unless the lessees elected not to accept the offer.

We are now dealing only with particular averments that were considered inadequate by the learned court below to require an answer by defendants. What may appear by answer, or at the trial, is not before us, it may be, as suggested in argument, that defendants have a complete defense; on the present record, we are constrained to think that the decree dismissing the bill was premature. In support of his preliminary objections, the learned counsel for appellees said: "The all-important element of purchase price is missing. It is elementary that there must be a fixed valid consideration for the transfer of real property before there is a specifically enforcible contract. . . ." It is plain from what has been said that the argument must fail because the contract specified a method of making certain what the price should be, and, in accord with that provision, the bill avers that a price was agreed upon and became the consideration for the sale by the lessor-defendant to another defendant with notice of the option and without

---

[4] See *Northern Central Ry. Co. v. Walworth*, 193 Pa. 207, 212, 44 A. 253.

opportunity to plaintiffs to accept the offer. Having definitely stated the contingency which should fix the price, the parties may not ignore the fact determined in the manner agreed to. It has been held that specific performance may be granted at the suit of an optionee: *Corson v. Mulvany,* 49 Pa. 88; see also *Smith & Fleek's Appeal,* 69 Pa. 474, 480; *Yerkes v. Richards,* 153 Pa. 646, 650, 26 A. 221; *Schaeffer v. Herman,* 237 Pa. 86, 85 A. 94; *Phila. Ball Club v. Lajoie,* 202 Pa. 210, 217, 51 A. 973; *Sherman v. Herr,* 220 Pa. 420, 69 A. 899. What is said in appellees' argument about want of mutuality of obligation and remedy[5] has no application to the record. Mutuality of obligation is one thing and mutuality of remedy another; the lessor and the lessee became mutually obligated to each other and each had a remedy against the other. When the lessor and his purchaser agreed on the price, it became the lessor's duty to notify the lessee in order to start running the fifteen-day period during which the lessee must elect. If he did nothing, the lessor lost nothing because he had already been paid for the offer; the lessor was under a fiduciary duty, primarily to the lessee, and secondarily to the proposed purchaser; if the lessee did not accept, his rejection terminated the fiduciary duty to him and the lessor remained accountable only to his purchaser; but if the lessee accepted, the secondary obligation to the purchaser was discharged. The lessor's duty to convey, whether to the lessee, or, if he rejected the option, to the other defendant purchaser, was enforceable in equity, while at the same time the right to specific performance (by assumpsit as administered in this state: *McClenachan v. Malis,* 310 Pa. 99, 164 A. 780) vested in the lessor. If the trial should result in a decree requiring the lessor to convey or cause to be conveyed, to plaintiffs, it will be conditioned on the payment of the purchase price and in other respects, if any, necessary to

---

[5] See Williston, Contracts, Vol. 5 (rev. ed. 1937), section 1433 et seq.

give full relief to both parties. But, in addition, it should be observed that "The fact that the remedy of specific enforcement is not available to one party is not a sufficient reason for refusing it to the other party": Restatement, Contracts, section 372(1); also see comments and illustrations of the rule, p. 678 et seq.

2. The second objection was absence of tender of performance. The averment relating to tender is in these words: "10. That the plaintiffs are ready and willing to purchase said premises and pay therefor the same price paid by the Stroudsburg Security Trust Company." Obviously the averment might have been more precise, but we do not understand that the bill was dismissed on that ground.

On this branch of the case appellants, conceding that he who seeks equity must do equity, contend that defendants' conduct made unnecessary tender of the price, for the purpose of putting defendant in default, because the lessor's conveyance to the Trust Company was a denial of plaintiffs' rights; this view is supported by our decisions: *Atlas Portland Cement Co. v. American Brick and Clay Co.*, 280 Pa. 449, 124 A. 650; *Hopp v. Bergdoll*, 285 Pa. 112, 131 A. 698; *Schaeffer v. Coldren*, 237 Pa. 77, 85 A. 98. The averment was not of a tender to put defendant in default but to show plaintiffs' readiness to do equity. Tender to the defendant Fort Penn Realty Company's successors in title, who are also defendants, was not necessary as plaintiffs' contract was with the defendant lessor only: the other defendants, with notice, involved themselves in the contract relations of the lessor and lessees: compare *Caskie v. Phila. Rapid Transit Co.*, 321 Pa. 157, 184 A. 17; *Klauder v. Cregar*, 327 Pa. 1, 192 A. 667; *Northern Central Ry. Co. v. Walworth*, 193 Pa. 207, 44 A. 253.

There is no merit in appellee's point that no exception was taken to the final decree: see Equity Rule 72.

Decree reversed, bill reinstated, record remitted for further proceedings, costs to abide final decree.