### McARTHUR et al. v. ROSENBAUM CO. OF PITTSBURGH.

#### No. 10070.

United States Court of Appeals,
Third Circuit.

Argued Dec. 20, 1949.

Filed March 7, 1950.

judgment. The plaintiffs are lessors in two leases of part of a 12 story department store known as Rosenbaum's in Pittsburgh. The leases were executed in 1912 and went into effect on April 1, 1915. By their terms they will expire on March 31, 1950, and the lessee, the defendant herein, at that time will lose its right to occupy the part of the building covered by the leases unless a paragraph, which is in each lease, gives it an enforceable option to enter into a new lease. The paragraph is: "It is further agreed that the Lessee shall have the first refusal to make a new lease from the first of April, 1950, upon the herein described property and the building erected thereon."

The District Court has decided that the first refusal clause is unenforceable, first because it is too vague to be enforced and second because it was superseded by an amendment to the leases dated January 18, 1936. The defendant, lessee, has appealed, contending not only that the District Court erred in deciding that the first refusal clause is unenforceable, but also that the federal courts have no jurisdiction in the case for the reason that certain indispensable parties have been omitted from it, who, when added as parties, will remove the diversity of citizenship from the case which is necessary to give the federal courts jurisdiction.

The first refusal clause conceivably could have three different meanings, which, depending on what the parties meant, could have been expressed in the lease in any one of the following ways:

(1) The lessee shall have the first refusal to make a new lease from the first of April, 1950, that is, the lessee's rights are such that if the lessors should desire to make a new lease from April 1, 1950, they must first negotiate with the lessee in an effort to see whether or not terms of a new lease, which are mutually agreeable to them, can be arrived at.

(2) The lessee shall have the first refusal to make a new lease from the first of April, 1950, that is, the lessee's rights are such that if the lessors should desire to make a new lease beginning April 1, 1950, they must first offer a new lease to the lessee, and the new lease offered to the lessee must contain

Charles E. Kenworthey, Pittsburgh, Pa. (Joseph M. Hartfield, White & Case, New York City, Frederick E. Milligan, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellant.

Mahlon E. Lewis, Pittsburgh, Pa., for appellees.

Before GOODRICH and HASTIE, Circuit Judges and GRIM, District Judge.

GRIM, District Judge.

This appeal is from a judgment of the District Court for the Western District of Pennsylvania on a petition for a declaratory

terms which are as good as the terms which the lessors may be willing to offer to any other person.

(3) The lessee shall have the first refusal to make a new lease from the first of April, 1950, that is, the lessee's rights are such that if the lessors should negotiate a lease with a third person and arrive at agreed terms with the third person, the lessors must offer this same lease under these same terms to the lessee before the lessors can enter into a new lease with the third person.

The defendant contends that the word "refusal" implies that an offer is to be made, which can be refused and, therefore, when the parties used the word "refusal" they meant that something must be offered to the lessee for acceptance or rejection. With this contention we agree. The defendant also contends that the fact that the words "first refusal" were used implies that the refusal was to be made ahead of some other person, who later would have the right to refuse whatever was first offered to the lessee. With this we agree also. But what is the thing which the lessee has the right to refuse and to refuse ahead of any other person? The first meaning we have suggested puts an obligation on the lessors to negotiate in good faith with the lessee ahead of any other person, giving the lessee the first right to accept or reject the lessors' offer to negotiate. The second meaning puts an obligation on the lessors to formulate in their minds the best terms they will put into a new lease and offer this new lease to the lessee ahead of any other person. The lessee then has the first right to accept or reject this definitely formulated lease.[1] The third meaning permits the lessors to negotiate with third persons, but

after the lessors have come to a meeting of minds with a third person, they cannot immediately execute a lease with the third person, but rather they must take the terms, which have been agreed upon, to the lessee and give the lessee the first right to accept or reject these terms.[2]

Each one of the meanings is equally fair and reasonable and this court cannot say which meaning was intended by the parties to the leases.

If the first meaning is given to the first refusal clause it is too vague to be enforceable, as it means merely that the parties will try to arrive at mutually agreeable terms. Driebe v. Fort Penn Realty Co., 331 Pa. 314, 200 A. 62, 117 A.L.R. 1091.[3] If the second meaning is given to the clause it also is too vague to be enforceable, as it then means merely that the lessors will offer to the lessee the best terms they will give to any other person. Hoffman's Appeal, 319 Pa. 1, 179 A. 38. If the third meaning is used, however, the clause is sufficiently definite to be enforced. Driebe v. Fort Penn Realty Co., supra, Atlantic Refining Company v. Wyoming National Bank, 356 Pa. 226, 51 A.2d 719, 170 A.L.R. 1060.

■ This court therefore finds itself in a position where it is asked to construe a clause which is so ambiguous that it is impossible to tell what it means and, further, using two out of its three meanings, the clause is unenforceable. Under these circumstances we must declare the clause unenforceable.

■ Ordinarily a clause in a contract cannot be disregarded if a reasonable meaning can be taken from it. This, however, does not apply to the present case for the

---

1. This meaning is difficult to apply to the present leases, but it would be easy to apply to a lease where the only difference of opinion would be in the amount of rent.

2. As a practical matter under the leases in the present case the second and third meanings would cause the lessors to act in the same manner, because the lessors would undoubtedly go to third persons first to see what terms of a new lease they could get before they would make

their offer to the lessee, but, nevertheless, theoretically the situations are different.

3. The contract in the present case was executed in Pennsylvania, and it concerned Pennsylvania subject matter. Consequently, it must be construed in accordance with the law of Pennsylvania, and the task of this court is to discover the Pennsylvania law and apply it to the contract. It cannot follow the numerous decisions of federal courts in labor cases, where, because of statute, a right to negotiate has been enforced.

reason that the clause under consideration purports to be an option. "* * * When contracts are optional in respect to one party, they are strictly interpreted in favor of the party bound and against the party that is not bound * * *" 3 Williston on Contracts, sec. 620, p. 1788. In an option the optionor is not bound beyond the point where the words of the option clearly and definitely bind him. Where, as in the present case, the words of the option are ambiguous, the optionor is not bound at all because the court cannot say to what obligation he is bound.[4]

■ The rule of interpretation that an ambiguous clause in a lease is interpreted in favor of the lessee does not apply to this case for the reason that the clause requiring interpretation is an option to enter into a new lease, and an option in a lease is a contract independent of the lease contract. Signor v. Keystone Consistory, 277 Pa. 504, 121 A. 320; Pettit v. Tourison, 283 Pa. 529, 129 A. 587, 39 A.L.R. 1106.

Defendant argues that the words "first refusal" have a technical and clear meaning, which is well known in the real estate business and among lawyers who specialize in real estate and lease transactions. This may well be correct, but there is no affirmative evidence in the case showing that it is correct. Plaintiffs' evidence shows that the lessors were fearful that the first refusal clause might be enforceable, but beyond that the evidence does not go.

■ The District Court has decided that the renewal clause is void even if it should be considered definite enough to be enforceable for the reason that it was superseded by an agreement dated January 18, 1936, which amended the original leases. With this we cannot agree. The amendatory agreement of 1936 changed the original leases in numerous ways and, among many other things, gave to the lessee a five year option to extend the leases for a five year period after March 31, 1950, upon definite terms (which option the lessee has rejected). There were certain things in the original leases which were not specifically changed. For instance, in the original leases it was provided that no alterations could be made to the building without the consent of the lessors, and nothing was said about this in the amendatory agreement. Nothing was said in the amendatory agreement about the renewal clause in the original leases. The amendatory agreement, however, did say: "The intent of this agreement is only to modify, change and amend those provisions of the original leases as herein specified; except as herein especially modified, changed and amended, all the terms, covenants and conditions of said original leases shall remain in full force and effect."

It is clear that the 1936 agreement did nothing more in reference to occupancy after March 31, 1950, than create an option in the lessee to renew the lease after that time. The new right was in no way inconsistent with the old right (under any definition of it). Under the old right the lessee could wait to see what the lessors were going to do before the lessee would do anything, while under the new right the lessee had an affirmative duty to accept or reject the new option regardless of whether or not the lessors did anything. Therefore, the renewal clauses in the original leases were not superseded by the 1936 agreement.

We will now consider the question of indispensable parties. The Rosenbaum department store building and the lot of ground which it completely covers are rectangular in shape. They extend from Penn Avenue on the north to Liberty Avenue on the south along the western side of Sixth Street in Pittsburgh. The lot is made up of four rectangular tracts of approximately equal size. Tract 1 is the northwestern fourth of the lot; Tract 2 is the northeastern fourth; Tract 3 is the southeastern fourth and Tract 4 is the southwestern fourth. Tracts 1 and 2 are owned by the plaintiffs in the present case, who are citizens of Illinois. Tract 3 is owned by citizens of Pennsylvania. Tract 4 is owned by a Pennsylvania corporation

---

4. The parties have already attempted to negotiate a new lease. The attempt was unsuccessful.

which, like defendant, is a wholly owned subsidiary of the National Department Stores, Inc.

In December, 1912, the Rosenbaum Company, which was the predecessor of the present defendant corporation, desiring to erect the present store building, executed leases on tracts 1, 2 and 3. The three leases were identical except for the names of the parties and the descriptions of the premises. They all contain the following clause: "And further the said Lessee is to have the right and hereby agrees, at the Lessee's own expense, to tear down and remove the present buildings on said lot and erect in place thereof a twelve story mercantile building suitable for department store purposes * * * The Lessee shall not be required to erect a wall between said building and buildings erected on land adjoining on the easterly and southerly sides, it being understood that it is the intention of the Lessee to also erect buildings on said adjoining sides, that the building to be erected on the premises hereby leased and the buildings to be erected on the said adjoining premises are together to constitute one building, but are to be erected that walls may be erected along the southerly and easterly sides of the above described premises * * *"

In accordance with the terms of the leases, the lessee erected the department store building at its own expense. It was and is one building rather than four separate buildings. On Tract 4 is located most of the service elevators, one of two batteries, the passenger elevators, all the wash rooms, the stairways furnishing access from floor to floor and the major system of the light, heat and power controls serving the entire building.

When it was decided to amend the original leases on January 18, 1936, only one instrument was prepared, and it was executed jointly by all the lessors of Tracts 1, 2 and 3. In addition to the fact that the new agreement was executed jointly by all the lessors of the three tracts, there are other features about it which indicate that the interest of the lessors in it are joint. The rent was made payable to one agent who was an agent for all the lessors. The

lessee could not assign the lease without the consent of all the lessors. A default under the new agreement was made a default under each of the original leases. It was provided that if any of the original leases should be terminated for any reason the lessee would have the right to terminate all the original leases.

The rule as to what constitutes indispensable parties comes from Rule 19 of the Federal Rules of Civil Procedure, 28 U.S. C.A., which is as follows: "(a) Necessary Joinder. * * * Persons having a joint interest shall be made parties and be joined in the same side as plaintiffs or defendants. When a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff."

█ There have been numerous decisions on the question as to what constitutes an indispensable party. They have set up two tests. The first was expressed in an opinion in a case in this court, Samuel Goldwyn Inc., v. United Artists Corporation, 3 Cir., 113 F.2d 703, as follows: "The word 'interest' as used in civil procedure rule providing that persons possessed of a joint interest shall be made parties and joined on the same side as plaintiff or defendant is an interest which must be directly affected legally by the adjudication in the case".

█ The second test was expressed in the case of Chidester v. City of Newark, 3 Cir., 162 F.2d 598, 600, where tenants in common of real estate were held not to be indispensable parties with other tenants in common, as follows: "* * * Indispensable parties under Rule 19 are those who were indispensable prior to the rules; they have such an interest in the controversy that a final decree cannot be made without * * * leaving the controversy in such a condition that a final determination may be wholly inconsistent with equity and good conscience."

The two tests, therefore, as to what constitutes an indispensable party are: (1) Is the interest of the alleged indispensable party such as will be directly affected legally by the adjudication? (2) Will the fail-

ure to join the alleged indispensable party be inconsistent with equity and good conscience?

Under both these tests we find that the owners of Tract 3 are not indispensable parties. The title to their property will be unaffected by the decision in this case. Legally their lease and the option in it also will be unaffected. When and if their legal interests are questioned in a court case they will be able to protect themselves. Under the second test also they are not indispensable parties. They are probably much interested in the result of this case since the lessee's decision as to whether or not it will occupy Tract 3 after March 31, 1950, will undoubtedly be influenced by its right to occupy Tracts 1 and 2 after that time, but there is no inequity in making this decision without joining the owners of Tract 3. The possibility that the owners of Tract 3 would lose their tenant on March 31, 1950, has been before them for 35 years. Under the terms of the original leases walls were required to be built along the property lines apparently to make it easy for each property owner to take over his own building at the end of the lease. There is no evidence as to whether or not these walls have been built, but, if they have, the owners of Tract 3 will be able to erect a new building on their property without much difficulty. It must be remembered that the owners of Tract 3, like the other lessors, will obtain after March 31, 1950, a building which was built at the expense of the lessee. If anyone will suffer an inequity it would appear to be the lessee, which not only will lose its lease, but also will lose the building which it has erected at its expense. But this is its own fault since, under the terms of the 1936 agreement, it had an opportunity to take up an option on the building for another five years and it chose to refuse the option.

Defendant's counsel has cited the case of Metropolis Theatre Co. v. Barkhausen, 7 Cir., 170 F.2d 481, to show that the owners of Tract 3 are indispensable parties. In the Metropolis case a 22 story office building and theatre were erected on two tracts of land. In an action to terminate the lease the court in the 7th Circuit decided that the owners of the second tract were indispensable parties. That case is quite similar to the present case, but it is distinguishable in that the building in that case contained a large theatre which could not be divided as can the building in the present case by the use of the walls along the property lines which were required to be built by the terms of the original leases.

Accordingly, the conclusions of this court are:

1. The Court has jurisdiction of the case.

2. The first refusal clause contained in the leases dated December 2 and December 6, 1912, respectively, does not give the defendant an enforceable option to make a new lease.

3. The first refusal clause contained in the leases dated December 2 and December 6, 1912, respectively, is not superseded by the agreement dated January 18, 1936.

The judgment of the District Court will be affirmed.[5]

Judge HASTIE concurs in the result.

---

5. Since the District Court came to three conclusions, namely: (1) The court has jurisdiction, (2) The first refusal clause is too vague to be enforced, and (3) The first refusal clause was superseded by the 1936 agreement, and this court does not agree with all these conclusions, an explanation should be made as to what is meant by the affirmance of the judgment of the district court.

The Declaratory Judgments Act, 28 U.S.C.A. § 2201, provides as follows: "In a case of actual controversy * * * any court of the United States

* * * may declare the rights and other legal relations of any interested party seeking such declaration * * * Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

Therefore, apart from the conclusion that the court has jurisdiction, which will be affirmed, the only part of the opinion of the District Court which constitutes a judgment reviewable by this court (no formal judgment was entered) is the general conclusion, or declaration, in reference to the rights of the parties,

which conclusion is that the first refusal clause gives the lessee no enforceable right to make a new lease. It is this general conclusion, or declaration, which will be affirmed. This court does not agree with the conclusion of the District Court that the first refusal clause was superseded by the 1936 agreement, but no formal reversal of this conclusion is required because it is merely an intermediate conclusion of law in the case and is not a judgment as defined by the Declaratory Judgments Act, a judgment being a declaration of the rights of the parties.