## Exxon Corp. v. Shover

*Robert C. Spitzer*, for plaintiff.
*Gilbert E. Petrina*, for defendants.

WEIDNER, *J.*, March 29, 1974—Complaint in equity was filed by plaintiff, Exxon Corporation, against defendants, Stephen B. Shover and Elverda E. Shover, his wife, asking that said defendants be enjoined from transferring or encumbering certain real estate owned jointly by them and that said defendants be ordered to execute and deliver to plaintiff a deed conveying clear and marketable title, in fee simple, by general warranty deed to said real estate. The real estate in question contains a

gasoline service station which is under lease from defendants to plaintiff corporation. The lease agreement contains a first refusal option clause, the applicability and enforceability of which precipitated this action.

## STATEMENT OF ISSUES RAISED

1. Whether the first refusal option is sufficiently binding and enforceable to enable a decree of specific performance to be rendered in favor of plaintiff?

2. Is plaintiff precluded from exercising its right of first refusal on the theory of equitable estoppel or waiver as a result of certain conversations between plaintiff's representatives and defendant, Mr. Shover, relative to a direct sale of the property here in question to plaintiff corporation?

3. Is the nonpayment of rent by plaintiff-lessee subsequent to its exercise of its right under the first refusal option a breach of the lease agreement so as to preclude a suit by plaintiff for specific performance under said lease agreement?

4. Has plaintiff offered to perform the same price, terms and conditions of the bona-fide third-party offer, as communicated to plaintiff by defendants pursuant to the specifications of the first refusal option?

5. May any relief be granted?

## FINDINGS OF FACT

1. Plaintiff, Exxon Corporation, is a Delaware corporation authorized to do business in Pennsylvania with regional offices at 7720 York Road, Baltimore, Maryland.

2. Plaintiff is the successor, by merger to Esso

Standard Oil Company, as evidenced by the statement of merger or consolidation by a surviving foreign corporation filed in the office of the Secretary of the Commonwealth on February 5, 1960.

3. Defendants, Stephen B. Shover and Elverda E. Shover, his wife, are adult individuals, residing at 59 South Enola Drive, Enola, Cumberland County, Pa.

4. Defendants have been and remain owners of certain real estate located in Enola, Cumberland County, Pa., to wit: a gasoline service station, building and premises, at all times material to plaintiff's claim.

5. On November 29, 1954, defendants, as lessors, entered into a "Lease to Company" agreement with plaintiff, as lessee, as to the above-described property for a 20-year term from April 1, 1955, to March 31, 1975, with yearly renewal options to 1980. The lease was recorded in the office of the Recorder of Deeds of Cumberland County on December 28, 1954, in Miscellaneous Book 111, page 50.

6. The "Lease to Company" agreement contains a first refusal option provision which provides, in pertinent part, that defendants-lessors covenant that they will not sell or otherwise convey the subject property during the term of the lease unless they notify plaintiff-lessee in writing of an acceptable bona fide offer by a third party to purchase the premises and plaintiff-lessee does not exercise its right to purchase said subject property at same price, terms and conditions of the acceptable third-party offer.

7. Plaintiff has paid all rent due and owing under the terms of the "Lease to Company" agreement up to and including the month of October, 1972.

8. Upon defendant's request, plaintiff's representatives, Mr. Cook and Mr. Davis, met in May 1972 with defendant Mr. Shover to discuss his intentions of selling the gasoline service station.

9. Defendant Mr. Shover told plaintiff's representatives that a bank employe informed him that the premises were worth approximately $65,000 to $85,000.

10. Defendants never offered the premises for sale to plaintiff at this or any other price range during this meeting.

11. The operation of the right of first refusal option was fully explained to Mr. Shover at this meeting.

12. Plaintiff's representatives stated that because no bona fide offer had been made to defendants by a third party, plaintiff was not obligated to make an immediate decision concerning the purchase of the station.

13. Plaintiff's representatives also advised Mr. Shover at the May meeting that no planned acquisition funds had been specifically budgeted by plaintiff for this station, because the lease gave plaintiff an outlet for its products through 1975, with yearly renewal options until 1980.

14. Subsequent to the May 1972 meeting between plaintiff's representatives and defendants, an offer to purchase the gasoline service station and premises was made to defendants by one James Greene.

15. The terms of the offer provided for a purchase of basic building and land for $30,000 at $500 a month over five years.

16. The terms were reduced to writing in the form of an "Agreement to Agree to a Lease-

Purchase Agreement" which was executed on July 18, 1972.

17. Defendants and Mr. Greene also entered into contemporaneous oral agreements concerning the purchase of defendants' inventory of tires, batteries and accessories and the retention of certain employes at specified wages and benefits.

18. These oral agreements were not reduced to writing in the "Agreement to Agree to a Lease-Purchase Agreement."

19. After execution of the agreement with Mr. Greene, and pursuant to the terms of the first refusal option, defendants, through their duly authorized agent and attorney, Gilbert E. Petrina, Esquire, gave plaintiff written notification by letter from Gilbert E. Petrina, Esquire, dated July 31, 1972, that defendants had received an acceptable bona fide offer from Mr. Greene of $30,000 for basic building and land.

20. In this letter there was no mention of the agreements between defendants and Mr. Greene concerning the purchase of the inventory and the retention of certain employes at specified wages and benefits.

21. At no time after the receipt by plaintiff of notice of Greene's offer to buy did plaintiff or its employes or agents state or imply that plaintiff would not exercise its rights under the first refusal option.

22. By letter dated September 6, 1972, James T. Ramsey, a duly authorized employe of plaintiff, sent notification to defendants that plaintiff was, by that letter, exercising its right of first refusal, would meet the offer defendants had received from Mr. Greene, and would purchase the property.

23. In anticipation of settlement for the property, plaintiff's attorney, Robert C. Spitzer, Esquire, gave written notification to defendants by letter dated September 27, 1972, of how the deed should be drawn and that tax receipts should be produced.

24. On October 4, 1972, at the Cumberland County Court House at 10:30 a.m., the time and place set for the settlement, plaintiff appeared through its attorney, Robert C. Spitzer, Esquire, ready, willing and able to deliver to defendants the purchase price and to accept defendants' deed.

25. Defendants did not appear, either individually or by a representative, at the date, time and place scheduled for settlement nor did they tender to plaintiff the deed to the property.

## DISCUSSION

We feel it necessary to initially dispose of the question of whether the first refusal option is binding and enforceable, because no relief can be granted if a valid first refusal option does not exist between the parties.

With respect to first refusal options in leases, the law in Pennsylvania is quite clear. In Driebe v. Fort Penn Realty Company, 331 Pa. 314 (1938), a first refusal option case, the Pennsylvania Supreme Court stated (at pp. 317-318):

"By agreeing with a proposed vendee on 'the sum named or agreed upon' as the price for the property, the lessor became a fiduciary, and the ascertainment of the selling price operated to vest the lessees with such equitable interest in the land as they would have had if the price had been named in the lease. That vesting resulted from lessor's having agreed not to sell to another if the lessees were

willing to buy at a price offered to the lessor which he was willing to accept. The lessor may not, by selling the property without notice, deprive the lessees of that right of election . . . Once the price was fixed, in the contingency specified, the lessees, if they, accepted, became entitled to ask for specific performance . . ."

Accordingly, it follows that if the terms of the first refusal option are sufficiently definite, relief may be had in equity by a decree of specific performance of the option to buy the property described in the agreement. See also Gateway Trading Co. Inc. v. Children's Hospital of Pittsburgh, 438 Pa. 329 (1970); Detwiler v. Capone, 357 Pa. 495 (1947).

The terms of the first refusal option in the lease from defendants to plaintiff are sufficiently definite. The subject matter of the agreement and the price are readily ascertainable. In addition, the contingency which makes the option operable is clearly apparent from the terms of the option. By the terms of the agreement itself, plaintiff must be given the first right to refuse the exact offer made by any other bona fide purchaser within 60 days of the communication of that offer by defendants to plaintiff. Noncompliance on the part of defendants after plaintiff's decision to exercise its option enables plaintiff to seek relief in equity in the form of a decree of specific performance of the option to purchase the described property.

Although a decree of specific performance would be an appropriate remedy for plaintiff, "whether they can obtain a decree may of course depend on other equitable principles.": Driebe v. Fort Penn Realty Co., 331 Pa. 314, 318 (1938). Defendants contend that plaintiff is precluded from exercising its right of first refusal on a theory of equitable estoppel or waiver.

A waiver in law is the act of intentionally relinquishing or abandoning some known right, claim or privilege: Johnson v. Concord Mutual Insurance Co., 450 Pa. 614, 620 (1973). To constitute a waiver of a legal right there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it: Transnational Consumer Discount Company v. Kefaver, 224 Pa. Superior Ct. 475, 479 (1973). From the evidence presented at the hearing, it is impossible to conclude that plaintiff intentionally abandoned its right of first refusal. Plaintiff's representatives, Mr. Cook and Mr. Davis, explained the mechanics of the first refusal option to Mr. Shover. Although the representatives indicated that plaintiff would probably not be interested in purchasing defendants' property at that time because money was not available for this particular station in the planned acquisition fund due to the existence of the lease which runs to August, 1975, with renewal options to 1980, they specifically stated that in order for the first refusal option to come into play plaintiff would have to be presented with an acceptable bona fide offer to purchase from a third party. It follows that until such offer was presented, the first refusal option was clearly not waived by plaintiff.

An essential element of equitable estoppel is that the party claimed to be estopped must have acted in such a way as to cause the complaining party to change his position to his injury in reliance thereon: Atlantic Refining Company v. Wyoming National Bank of Wilkes-Barre, 356 Pa. 226, 236 (1947). It is equally difficult to conclude that plaintiff was estopped from asserting its rights under the first refusal option. Defendants contend that the

estoppel is grounded in their discussions with plaintiff's representatives concerning defendants' desire to sell the gasoline service station. In those discussions Mr. Shover admitted that he did not specifically offer to sell the station to plaintiff and that the $65,000 to $85,000 figure was only a valuation figure given to him by his bank for the purpose of drafting his will. In addition, Mr. Shover stated that this was not a bona fide offer made by a third party. By stating the workings of the first refusal option and indicating that they would have to be presented with an acceptable third-party purchase offer before they would be legally obligated to make a decision concerning the immediate purchase of the station, plaintiff's representatives clearly stated what they believed to be the correct interpretation of the mechanics of the first refusal option. Without an offer from a third party, plaintiff was not required to accept or reject defendants' *valuation* figures. In so doing, plaintiff's representatives clearly did not create a situation that would have caused defendants to change their position to their injury. In the absence of expressly proved fraud, there can be no estoppel based on acts or conduct of the party sought to be estopped, where they are consistent with an honest purpose and with the absence of negligence as with their opposites: Funds for Business Growth, Inc. v. Maraldo, 443 Pa. 281, 288 (1971).

Defendants contend that plaintiff's nonpayment of rent by November 1, 1972, and the first of each subsequent month thereafter constitutes a breach of the terms of the lease so as to preclude a suit by plaintiff for specific performance. With this contention we cannot agree.

Where an option is exercised the title of the op-

tionee relates back to the date of the option and his interest is regarded as real estate as of that time. After the exercise of the option, the landlord-tenant relationship ceases to exist and the lease is converted into a contract of sale: Detwiler v. Capone, 357 Pa. 495, 499-500 (1947). Accordingly, lessee is under no duty to continue the payment of rent. See Mar-Rene Hosiery Mill, Inc. v. Margulies, 52 Lanc. 407 (1951). In the case at bar, plaintiff sent defendants notification of its intention to exercise its right of first refusal. This was accomplished by letter dated September 6, 1972, wherein plaintiff stated that it would meet Mr. Greene's offer and exercise its first refusal option to purchase the described property. This notification terminated the landlord-tenant relationship and thus eliminated plaintiff's obligation to pay rent. It therefore follows that the nonpayment of rent in November 1972 and in the subsequent months did not constitute a breach of the lease agreement. See Detwiler v. Capone, supra.

The case at bar is readily distinguishable from Gateway Trading Co., Inc. v. Children's Hospital of Pittsburgh, 438 Pa. 329 (1970), cited by defendants in support of their contention. In this case the court held that there was no evidence that lessor's residuary devisee excused a lessee from a rental obligation after it acquired title. The failure of lessee to meet the obligation put lessee in default under the lease. It then followed that devisee was not obligated to honor a first refusal option provided for in the lease before selling the leased property to another. However, in Gateway lessee failed to meet its rental obligations for a period of over four months before a third party made a bona fide offer to purchase the property. Being in default under the

provisions of the lease, lessee could not avail itself to the first refusal rights provision in the lease contract. In the instant case, plaintiff-lessee has completely fulfilled its rental obligations under the lease agreement up to the time that it chose to exercise the first refusal option to purchase according to the terms of the lease. As was stated above, the rental obligations ceased to exist after this date because the landlord-tenant relationship was terminated.

Lastly, defendants argue that plaintiff is not entitled to exercise the first refusal option because it has not offered to perform the same personal services offered as part of the consideration allegedly promised by Mr. Greene in his purchase offer. Defendants specifically refer to oral agreements concerning the purchase of the existing inventories of tires, batteries and accessories and the retention of employes with certain wages and benefits. By defendants' own admission, these oral agreements were not reduced to writing in the subsequent purchase contract entered into with Mr. Greene. Furthermore, plaintiff was not advised of these additional considerations in the letter they received from defendants' attorney concerning the receipt by defendants of an acceptable bona fide offer from Mr. Greene. This letter specifically stated that the offer of $30,000 was for "basic building and land," there being no mention of any additionals.

It is well established law in Pennsylvania that all preliminary negotiations, conversations and verbal agreements are merged in and superseded by a subsequent written contract and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties and its terms cannot be added to nor subtracted from by

parol evidence. See Keyser v. Margolis, 422 Pa. 553, 559 (1966) and cases cited therein. There are no allegations of fraud, accident or mistake by defendants. Accordingly, the terms of the contract entered into subsequent to Mr. Greene's offer cannot be changed by parol evidence. In addition, defendants cannot be allowed to change the position they took in their letter to plaintiff which described Mr. Greene's offer as one for "basic building and land." Plaintiff accepted what is rightfully concluded were the same terms, price and conditions of Mr. Greene's offer. It must therefore follow that the principles of estoppel and waiver so earnestly espoused by defendants (and discussed above) become applicable to preclude defendants from now asserting additional grounds for accepting Mr. Greene's offer.

The terms of the first refusal option here in question are sufficiently definite to enable plaintiff to seek a decree in equity for specific performance of the option to buy the property described in the agreement. Plaintiff is not precluded from seeking this decree on the ground that certain conversations between plaintiff's representatives and defendants constituted a waiver of its rights under the first refusal option or estopped plaintiff from exercising same. Further, plaintiff was not in default of its rental obligations under the terms of the lease agreement and plaintiff clearly obligated itself to undertake to perform the same price, terms and conditions of the third-party offer as communicated to it by defendants. Accordingly, it follows that relief in the form of a decree of specific performance can and must be granted in favor of plaintiff.

## CONCLUSIONS OF LAW

1. Defendants' failure to convey title of the premises here in question to plaintiff was a violation of the first refusal terms sufficient to entitle plaintiff to a decree of specific performance.

2. Plaintiff has not waived its first refusal rights by virtue of the conversations between its representatives and defendants relative to a direct sale of the gasoline service station to plaintiff corporation.

3. The doctrine of equitable estoppel is not applicable to preclude plaintiff from exercising its first refusal rights.

4. Upon exercise of its option to purchase under the first refusal agreement, plaintiff was no longer obligated to make rental payments to defendants-lessors.

5. Plaintiff has offered to perform the same price, terms and conditions of the bona fide third-party offer, as it was communicated to them by defendants.

6. Relief may be granted.

## DECREE NISI

And now, March 29th, 1974, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. Defendants, Stephen B. Shover and Elverda E. Shover, are ordered to execute and deliver to plaintiff, Exxon Corporation, within 30 days after the entry of the order of court, a deed conveying to plaintiff clear and marketable title, in fee simple, by general warranty deed to the premises here in question upon plaintiff's full compliance with the terms of the offer it is deemed to have accepted.

2. Defendants, Stephen B. Shover and Elverda E. Shover, are enjoined and restrained from conveying or in any way encumbering the premises here in question except to convey the same to plaintiff, Exxon Corporation.

3. The prothonotary of Cumberland County is directed to file this opinion, enter the within decree nisi, give notice to the parties or their counsel of record as provided by the rules of equity practice in Pennsylvania, and, unless exceptions are filed in this decree nisi within 20 days after said notice, this decree shall be entered as a final decree by the prothonotary.